STATE OF NORTH CAROLINA v. MILTON KELLY AND TYRONE GARDNER

No. COA94-1052

(Filed 21 November 1995)

**1. Conspiracy § 39 (NCI4th)— conspiracy instruction—prejudicial error**

The trial court's instruction with regard to conspiracy was prejudicial error where it allowed the jury an opportunity to act upon an incorrect interpretation and convict defendants of conspiracy upon a finding that defendants knowingly possessed or attempted to possess cocaine.

**Am Jur 2d, Trial § 1142.**

**Propriety of imposing special parole term as part of sentence, under 21 USCS sec. 846, for a conspiracy to violate Comprehensive Drug Abuse Prevention and Control Act of 1970. 48 ALR Fed 767.**

**Proper venue in prosecution under 21 USCS sec. 846 for attempt or conspiracy to violate Comprehensive Drug Abuse Prevention and Control Act of 1970. 74 ALR Fed. 669.**

**2. Narcotics, Controlled Substances, and Paraphernalia § 136 (NCI4th)— maintaining dwelling for controlled substance activity—sufficiency of evidence**

The evidence was sufficient to be submitted to the jury in a prosecution for intentionally keeping and maintaining a dwelling for the purpose of using, keeping, or selling controlled substances where it tended to show that defendant possessed a key to the house in question and used it to go in and out of the house; inside the house in an upstairs bedroom was a letter from an insurance company addressed to defendant at the house in question; scales and baking soda, items commonly used to cut and package cocaine, were located in the kitchen of the house; a package containing cocaine was addressed to Randy Brown at the house; defendant stated he was Randy Brown when asked by an undercover officer; and defendant listed the address of the house as his address after he was arrested.

**Am Jur 2d, Drugs, Narcotics and Poisons § 47.**

STATE v. KELLY

[120 N.C. App. 821 (1995)]

Appeal by defendants from judgments entered 9 June 1994 in Wake County Superior Court by Judge Stafford Bullock. Heard in the Court of Appeals 16 October 1995.

*Attorney General Michael F. Easley, by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*Law Offices of George W. Hughes, by George W. Hughes and John F. Oakes, Jr., for defendant-appellant Kelly.*

*Aguirre Law Office, by Bridgett Britt Aguirre, for defendant-appellant Gardner.*

GREENE, Judge.

Milton Kelly and Tyrone Gardner (defendants) were tried together and convicted of conspiracy to traffic cocaine by possession of 200 grams or more but less than 400 grams, pursuant to N.C. Gen. Stat. § 90-95(h)(3)(b). Defendant Gardner was also tried and convicted of intentionally maintaining a dwelling for the purpose of keeping and/or selling a controlled substance, pursuant to N.C. Gen. Stat. § 90-108(a)(7). Judgments were entered on 9 June 1994, with both defendants being sentenced to fourteen years imprisonment.

The evidence offered by the State tended to show that on 4 November 1993, Federal Express in Durham called authorities, stating that they were holding a "suspicious" package. Upon investigation, the package was discovered to contain approximately 300 grams of cocaine, a black shirt and potpourri. It was also discovered that the phone number on the sending bill was fictitious, as was the address on the package. The package was addressed to "Randy Brown, 1225 Jacksontown Court, Carry [sic], North Carolina." Federal Express received a call the same day from an anonymous caller asking why the package had not been delivered and told Federal Express that the address was actually 1225 Jamestown Court in Cary, North Carolina, which was a valid address.

On 5 November 1993, officers conducted a controlled delivery of a "dummy" package, which looked like the original package, but did not contain any cocaine, to 1225 Jamestown Court. Before delivery, defendants were observed standing in the doorway of the house at that address looking like they were waiting for something. Defendant Kelly was seen leaving the residence in a burgundy car, and then com-

ing back. Upon delivery, the undercover officer told defendant Gardner that he had a package for Randy Brown and Gardner stated that he was Randy Brown, and signed for the package "Randy Borwn [sic]." Gardner had a key to the residence which he used when the package was delivered. However, the package never went inside the house, but was placed in the trunk of the car used by Kelly.

When officers closed in to make an arrest, defendants fled. While running, Gardner was seen throwing a membership card from his pocket, which bore the name "Randy Brown." Inside the house, officers discovered a letter addressed to Gardner at 1225 Jamestown Court, scales and baking soda, a ziplocked bag of potpourri, and two US Air airline tickets in the name of James King. The day before the "dummy" delivery, officers working at Raleigh-Durham Airport saw Kelly get off a US Air flight that had arrived from La Guardia Airport. When approached at the airport by the officers, Kelly said his name was James King and showed an airline ticket in that name, but did not have any other identification.

The defendants moved to dismiss all the charges, which motions were denied. The defendants did not present evidence.

The trial court initially instructed the jury that defendants "has [sic] been accused of trafficking in cocaine, which is the unlawful possession of 200 to 399 grams of cocaine." The trial court then proceeded to inform the jury that the State had the burden of proving "two things beyond a reasonable doubt." Finally the trial court instructed the jury that they had a "duty to return a verdict of guilty of trafficking in cocaine" if they found the State had satisfied its burden of proof. The trial court also instructed on felony conspiracy to commit the offense of drug trafficking by possession of cocaine. After both the State and defendants informed the trial court that it had improperly instructed on trafficking, the court told the jury that

it was properly brought to my attention that the instruction that I had given you needed to be modified and that is that part of the instruction that dealt with drug trafficking and possession of controlled substance and feloniously [sic] conspiracy. That which I said to you about the two elements or three elements in drug trafficking by way of possession and that which I said to you about feloniously [sic] conspiracy, disregard that altogether and take this instruction instead.

The new instruction stated:

Now I charge that for you to find the defendant guilty of felonious conspiring to commit trafficking in cocaine the State must prove three things beyond a reasonable doubt:

First, that the defendant and at least one other person entered into an agreement.

Second, that the agreement was to commit trafficking in cocaine by possession of 200 or more grams but less than 400 grams of cocaine. Trafficking in cocaine by possession consists of the defendant knowingly possessed, and a person possesses cocaine when he is aware of its presence and has either by himself or together with others both the power and the intent to control the disposition or use of that substance.

Second, that the amount of cocaine which the defendant possessed was more than 200 but less than 400 grams of cocaine.

So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant Tyrome [sic] Gardner knowingly possessed or attempted to possess cocaine.

And third, that the defendant and at least one other person intended the agreement be carried out at the time it was made.

So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant agreed with at least one other person trafficking in cocaine by possession of 200 grams but less than 400 grams of cocaine and the defendant and at least one other person intended at the time the agreement was made that it would be carried out, it would be your duty to return a verdict of guilty as charged. However, if you're not so able to find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

A similar instruction was also read as to Kelly. After the instruction, defendants made a motion for a mistrial, which was denied. The motions to dismiss and for a mistrial were renewed after the jury returned a verdict of guilty on all counts, and denied, as was defendants' motion for appropriate relief. Defendants appeal.

The issues are whether (I) the instruction with regard to conspiracy was prejudicial error; and (II) the trial court erred in denying

Gardner's motion to dismiss the charge of intentionally maintaining a dwelling for the purpose of keeping and/or selling controlled substances.

I

[1] Defendants argue that the conspiracy instruction was error because it included the following:

> So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant[s] . . . knowingly possessed or attempted to possess cocaine.

The State argues that although the "corrective charge . . . was not the model of clarity . . . when the charge is considered contextually as a whole no prejudicial error is made to appear." We agree with the defendants.

It is well accepted that a proper subsequent instruction corrects any harmful effect of an earlier improper instruction. *State v. Cousins,* 289 N.C. 540, 550-51, 223 S.E.2d 338, 345 (1976). Therefore, in this case the first instruction given by the trial court, although in error, would not require a new trial if the subsequent instruction was correct. The second instruction, however, was not correct. The trial court no doubt intended to charge the jury that a verdict of guilty of conspiracy to commit trafficking in cocaine by possession should be returned only upon a finding by the jury that each defendant agreed with the other to commit the offense. Even so, the instruction afforded the jury an opportunity to "act upon a[n] . . . incorrect interpretation" and convict the defendants of conspiracy upon a finding that the defendants "knowingly possessed or attempted to possess cocaine." *See State v. Parrish,* 275 N.C. 69, 76, 165 S.E.2d 230, 235 (1969) (instruction correct in part and incorrect in part was error). This is particularly so in light of the previous erroneous instruction informing the jury that it could convict the defendants for possession of cocaine. Because there is a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial," the defendants have satisfied their burden of showing prejudicial error and are entitled to a new trial. N.C.G.S. § 15A-1443(a) (1988); *Parrish,* 275 N.C. at 76, 165 S.E.2d at 235; *see State v. Wallace,* 104 N.C. App. 498, 505, 410 S.E.2d 226, 230 (1991) (instructional errors are generally subject to harmless error analysis).

II

**[2]**  Defendant Gardner also argues that the trial court erred in denying his motion to dismiss and set aside the jury verdict for the charge of intentionally keeping and maintaining a dwelling for the purpose of using, keeping, or selling controlled substances. N.C.G.S. § 90-108(a)(7) (1993). Defendant Gardner contends there was insufficient evidence to support this charge.

The record shows that defendant possessed a key to the house at 1225 Jamestown Court and used it to go in and out of the house. Inside the house, in the upstairs master bedroom, a letter from Integon Insurance was found addressed to defendant at 1225 Jamestown Court. Scales and baking soda, items commonly used to cut and package cocaine, were located in the kitchen of the house. Potpourri similar to that found in the package containing cocaine was also found in a ziplock bag in the home. The package was addressed to Randy Brown, and defendant stated that he was Randy Brown when asked by an undercover officer. Defendant also listed 1225 Jamestown Court as his address after he was arrested.

Although this evidence is not overwhelming, a reasonable.person could infer from the evidence that defendant was in control of and maintained the residence for drug activities. To withstand a motion to dismiss, overwhelming evidence is not needed. In close or borderline cases, "courts have consistently expressed a preference for submitting issues to the jury. . . ." *State v. Jackson*, 103 N.C. App. 239, 244, 405 S.E.2d 354, 357 (1991) (*quoting State v. Hamilton*, 77 N.C. App. 506, 512, 335 S.E.2d 506, 510 (1985), *disc. rev. denied*, 315 N.C. 593, 341 S.E.2d 33 (1986)). There was no error with respect to this issue.

New trial on the conspiracy to traffic in cocaine by possession.

No error on the maintaining a dwelling conviction.

Chief Judge ARNOLD and Judge SMITH concur.