STATE OF NORTH CAROLINA v. DEWAYNE ANTHONY McNAIR

No. COA00-1202

(Filed 6 November 2001)

**1. Indictment and Information— amendment—victim's name—typographical errors**

The trial court did not err in a robbery with a dangerous weapon, second-degree kidnapping, and first-degree kidnapping case by allowing the State to amend the name of the victim in two of seven indictments from Donald Dale Cook to Ronald Dale Cook to comport with the evidence presented at the trial on the ground that they were typographical errors, because: (1) the correct name of the victim appears twice on the indictment for robbery with a dangerous weapon; (2) the variance was inadvertent, and defendant was neither misled nor surprised as to the nature of the charges; and (3) the amendment did not substantially alter the charge in the original indictment.

**2. Criminal Law— prosecutor's argument—defendant's failure to present evidence of alibi**

The trial court did not err in a robbery with a dangerous weapon, second-degree kidnapping, and first-degree kidnapping case by allowing the prosecutor to comment, over defendant's objection, on defendant's failure to present evidence of an alibi, because: (1) it was not an impermissible comment on defendant's decision not to testify; and (2) while a prosecutor may not comment on the failure of the accused to testify, he may comment on a defendant's failure to produce witnesses or exculpatory evidence to contradict or refute evidence presented by the State.

**3. Sentencing— firearms enhancement—second-degree kidnapping—issue not submitted to jury**

Although the trial court erred by enhancing each of defendant's sentences for his convictions of second-degree kidnapping

by sixty months for possession of a firearm during the offense where the jury did not specifically pass on the issue, it was not plain error because there is no reasonable possibility that had the error in question not been committed that a different result would have been reached at trial.

**4. Sentencing— firearms enhancement—second-degree kidnapping—fatally defective indictment**

The trial court committed plain error by enhancing each of defendant's sentences for his convictions of second-degree kidnapping by sixty months for possession of a firearm during the offense based on a fatally defective indictment because the indictment failed to allege the facts to support the firearms enhancement found in N.C.G.S. § 15A-1340.16A.

Appeal by defendant from judgments entered 14 April 2000 by Judge Richard L. Doughton in Guilford County Superior Court. Heard in the Court of Appeals 13 September 2001.

*Attorney General Roy Cooper, by Special Deputy Attorney General Alexander Peters, for the State.*

*W. David Lloyd for defendant appellant.*

McCULLOUGH, Judge.

Defendant Dewayne Anthony McNair was tried before a jury at the 27 March 2000 Criminal Session of Guilford County Superior Court. The facts shown at trial were that early on the morning of 2 October 1996 two black males, one matching the description of defendant, were picked up by a cab driver for the Red Bird Cab Company in Greensboro. Soon after the cab reached the on-ramp for Interstate 85 Business, one of the men pulled a gun and directed the driver to pull over. After being robbed of her collected fares, the driver was forced to get into the trunk of the cab.

While the driver was in the trunk, defendant and two other men stopped at the Bi-Lo grocery store at approximately 2:00 a.m. Once there, defendant forced two store employees who were stocking shelves into the store's bathroom and robbed them. Defendant then returned to the front of the store and assaulted another store employee until she became unconscious. In the meantime, the two other men with defendant had forced the store's manager and assistant manager to hand over all the store's cash and receipts.

STATE v. McNAIR

[146 N.C. App. 674 (2001)]

The threesome left the store in the stolen cab. They parked the cab in a well-lit area, got into another car and left, leaving the driver in the trunk.

Defendant was indicted on four counts of robbery with a dangerous weapon, two counts of second degree kidnapping, and one count of first degree kidnapping. The jury convicted defendant on all counts. Defendant was sentenced to minimum terms of 146 months and maximum terms of 185 months for each of the convictions of robbery with a dangerous weapon; a minimum term of 168 months and a maximum term of 211 months for the first degree kidnapping conviction; minimum terms of 119 months and maximum terms of 152 months for each of the second degree kidnapping convictions, of which 60 months was based on the "firearm enhancement" pursuant to N.C. Gen. Stat. § 15A-1340.16A, all to run consecutively.

Defendant asserts that the trial court erred by (I) allowing the State to amend the indictments from Donald Dale Cook to Ronald Dale Cook to comport with the evidence presented at trial on the ground that they were typographical errors; (II) allowing the prosecutor to comment, over defendant's objection, on defendant's failure to present evidence of alibi in violation of his rights under both state and federal constitutions; and (III) enhancing each of defendant's sentences for his convictions of second degree kidnapping by 60 months for possession of a firearm during the offense where the jury did not specifically pass on the issue in violation of *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000), as plain error.

I.

[1] Defendant's first assignment of error asserts that the trial court erred in allowing the State to amend the indictments against defendant.

N.C. Gen. Stat. § 15A-923(e) (1999) provides that "[a] bill of indictment may not be amended." An amendment within the meaning of this statute is " 'any change in the indictment which would substantially alter the charge set forth in the indictment.' " *State v. Marshall*, 92 N.C. App. 398, 401, 374 S.E.2d 874, 875 (1988) (quoting *State v. Price*, 310 N.C. 596, 598, 313 S.E.2d 556, 558 (1984)), *cert. denied*, 328 N.C. 273, 400 S.E.2d 459 (1991).

This Court has held that "[a] change in an indictment does not constitute an amendment where the variance was inadvertent and

defendant was neither misled nor surprised as to the nature of the charges." *State v. Campbell,* 133 N.C. App. 531, 535-36, 515 S.E.2d 732, 735, *disc. review denied,* 351 N.C. 111, 540 S.E.2d 370 (1999); *see also Marshall,* 92 N.C. App. 398, 374 S.E.2d 874.

In the *Marshall* case, the trial court allowed the State to amend the victim's name in a rape indictment from "Regina Lapish" to "Regina Lapish Foster." *Marshall,* 92 N.C. App. at 401, 374 S.E.2d at 875. In that case there were four separate indictments for different criminal violations. *Id.* Only the rape indictment used the incorrect name of the victim. The Court, in affirming the trial court, said that "[i]t is clear that the rape indictment inadvertently omitted the last name of Regina Lapish Foster. At no time was defendant misled or surprised as to the nature of the charges against him." *Id.* at 401, 374 S.E.2d at 876.

In *State v. Bailey,* 97 N.C. App. 472, 389 S.E.2d 131 (1990), the trial court allowed the State to amend the victim's name on three indictments from "Pettress Cebron" to "Cebron Pettress." *Id.* at 475, 389 S.E.2d at 133. The Court, citing *Marshall,* concluded that the errors in the indictments were inadvertent, and said, "We discern no manner in which defendant could have been misled or surprised as to the nature of the charges against him." *Bailey,* 97 N.C. App. at 476, 389 S.E.2d at 133.

In the present case, the trial court allowed the State to amend two of seven indictments. Specifically, in case 00 CRS 23235, Count I indicts defendant for robbery with a deadly weapon of the victim, Ronald Dale Cook. It refers to the victim properly twice, but it refers to a "Donald Dale Cook" once. In case 00 CRS 23236, Count II indicts defendant for two counts of second degree kidnapping of the victim, who was also Ronald Dale Cook. However, in this Count, the indictment only refers to a "Donald Dale Cook." At trial, the "D's" were amended to "R's" so that both indictments read "Ronald" throughout.

The errors in the indictments were inadvertent. The correct name of the victim appears twice on the indictment for robbery with a deadly weapon. The defendant could not have been misled or surprised as to the nature of the charges against him, and the indictments were correct in all other respects. We hold that " 'the amendment to the indictment was permissible because it did not substantially alter the charge in the original indictment.' " *State v. Bowen,* 139 N.C. App. 18, 27, 533 S.E.2d 248, 254 (2000) (quoting *State v. Brinson,* 337 N.C. 764, 767, 448 S.E.2d 822, 824 (1994)).

We note that there is a line of cases by our Supreme Court which hold that "[a] change in the name of the victim substantially alters the charge in the indictment." *See State v. Abraham*, 338 N.C. 315, 340, 451 S.E.2d 131, 144 (1994) ("Where an indictment charges the defendant with a crime against someone other than the actual victim, such a variance is fatal."). *Id.* The *Abraham* case held that a change from Carlose Antoine Latter to Joice Hardin was such a change that substantially altered the indictment, and was fatal. *Id.* at 339, 451 S.E.2d at 143; *see also State v. Call*, 349 N.C. 382, 424, 508 S.E.2d 496, 522 (1998) (holding that a change from Gabriel Hernandez Gervacio to Gabriel Gonzalez was fatal); *State v. Bell*, 270 N.C. 25, 29, 153 S.E.2d 741, 744 (1967) (holding that a change from Jean Rogers to Susan Rogers was fatal); and *State v. Overman*, 257 N.C. 464, 468, 125 S.E.2d 920, 924 (1962) (holding that a change from Frank E. Nutley to Frank E. Hatley was fatal). The defendant argues that our cases of *Bailey* and *Marshall* are irreconcilable with these cases. We disagree.

Our Court has recently cited *Abraham* for the proposition that a change in the defendant's name substantially alters the indictment. *See Bowen*, 139 N.C. App. 18, 533 S.E.2d 248; *State v. Grigsby*, 134 N.C. App. 315, 517 S.E.2d 195 (1999), *reversed on other grounds*, 351 N.C. 454, 526 S.E.2d 460 (2000). Likewise, the Supreme Court has cited the *Bailey* case and its holding permitting the change of a defendant's name with approval in *State v. Snyder*, 343 N.C. 61, 68, 468 S.E.2d 221, 225 (1996). We do not believe the Supreme Court intended the *Abraham* holding to be a blanket prohibition on changing the name of the victim in a criminal indictment. Correcting inadvertent mistakes in an indictment, which was done here and in the previous *Bailey* and *Marshall* cases, does not undermine the holding in *Abraham*. These cases can be read in harmony, rather than in opposition.

This assignment of error is overruled.

II.

**[2]** Defendant next assigns error to the trial court's overruling of his objection to the State's closing argument, and argues that it was an impermissible comment on defendant's decision not to testify. At the end of the State's closing, the following transpired:

> [MR. PANOSH: State]: And there has not been one shred of evidence to say that the defendant was not there that night, robbing the Bi-Lo. Ask yourself, ladies and gentlemen of the jury, if you

lived 800, 900 miles away from Greensboro, somewhere in Florida, and you were accused of something you didn't do on October the 2nd of 1996, don't you think you'd have one neighbor, one—

MR. LLOYD: Objection, Your Honor. Improper comment on the defendant's decision not to testify or present evidence.

THE COURT: Overruled.

MR. PANOSH: —one girlfriend, one wife, one fellow employee, one person who knows that you were down there in Florida, and not robbing the Bi-Lo? Couldn't you have that one person here to explain to this jury that it's all a big mistake?

The State's evidence is totally uncontroverted, and there's not been one shred of evidence to say he was anywhere but at the Bi-Lo, robbing the Bi-Lo, that he was anywhere but in Greensboro and High Point, planning the abduction, the kidnapping and the robbery of Ms. Martin and taking part in it. Not one shred of evidence consistent with innocence.

To put this into context, the parties had discussed on the record with the trial court their respective strategies before closing arguments were given. The State expressed its displeasure with the fact that defendant had forecasted an alibi in his opening statement by saying, "Our evidence will show that he was not there at the Bi-Lo," and then did not put on any evidence. The State asked for "substantial latitude" to address this fact in closing arguments. Defendant considered this a backdoor attempt to comment on defendant's decision not to testify. Defendant admitted that he had said, "Our evidence will show he was not at the Bi-Lo. He's not the one." The trial court decided to postpone any ruling and that defendant would have to object at the time.

"While a prosecutor may not comment on the failure of the accused to testify, he may 'comment on a defendant's failure to produce witnesses or exculpatory evidence to contradict or refute evidence presented by the State.' " *State v. Skeels*, 346 N.C. 147, 153, 484 S.E.2d 390, 393 (1997) (quoting *State v. Reid*, 334 N.C. 551, 555, 434 S.E.2d 193, 196 (1993)). Defendant in this case argues that the State has created a "ruse" that creates the "inescapable conclusion that an innocent man would have presented evidence of his alibi through not only other people, but by taking the stand himself." We are not convinced. The prosecutor's comments were directed "solely toward the

defendant's failure to offer evidence to rebut the State's case, not at defendant's failure to take the stand himself; as such, the statement did not constitute an impermissible comment on defendant's failure to testify." *State v. Jordan*, 305 N.C. 274, 280, 287 S.E.2d 827, 831 (1982); *State v. Tilley*, 292 N.C. 132, 232 S.E.2d 433 (1977). In *Jordan*, the district attorney noted in his closing argument "that defendant had not produced any alibi witnesses and stated, 'Where are the witnesses who can put him anywhere else?' " *Id.* at 279-80, 287 S.E.2d at 831. We find the comments here to be no different. *See also State v. Williams*, 341 N.C. 1, 459 S.E.2d 208 (1995), *cert. denied*, 516 U.S. 1128, 133 L. Ed. 2d 870 (1996) (holding that prosecutor's statement that, if defendant was somewhere else on the dates of the crimes, someone would have come into court and told the jury where defendant was at the time of the crimes, was not improper, but directed toward defendant's failure to offer evidence to rebut State's case); *State v. Ward*, 338 N.C. 64, 449 S.E.2d 709 (1994), *cert. denied*, 514 U.S. 1134, 131 L. Ed. 2d 1013 (1995), *aff'd sub nom. Ward v. French*, 165 F.3d 22 (4th Cir. 1998), *cert. denied*, 526 U.S. 1124, 143 L. Ed. 2d 809 (1999) (holding that prosecutor's comments in closing arguing that defendant failed to produce forecasted evidence were not improper comments on defendant's failure to testify, but instead were fair and proper comments on defendant's failure to present any evidence).

This assignment of error is overruled.

III.

[3] Defendant's final assignment of error is that the trial court erred by enhancing his sentence by 60 months for possession of a firearm during the offense for which he was convicted where the jury did not specifically pass on the issue in violation of *Jones*, 526 U.S. 227, 143 L. Ed. 2d 311, and *Apprendi*, 530 U.S. 466, 147 L. Ed. 2d 435.

Since defendant filed this appeal, our Supreme Court has ruled on the applicability of *Jones* and *Apprendi* to North Carolina's sentencing in *State v. Lucas*, 353 N.C. 568, 548 S.E.2d 712 (2001). We note initially that *Lucas* controls in this case. The *Lucas* Court stated that "this ruling applies to cases in which the defendants have not been indicted as of the certification date of this opinion [9 August 2001] and to cases that are now pending on direct review or are not yet final." *Id.* at 598, 548 S.E.2d at 732. While defendant's appeal was docketed 16 October 2000, it was not heard until 13 September 2001.

As defendant notes in his brief, he did not raise an objection at trial and thus our review is limited to a review for "plain error." *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). Our Supreme Court adopted the plain error rule in *State v. Black*, 308 N.C. 736, 303 S.E.2d 804 (1983), with regard to N.C.R. App. P. 10(b)(1), "when no objection or exception to evidence presented and admitted was made at trial." *State v. Gardner*, 315 N.C. 444, 449, 340 S.E.2d 701, 706 (1986); *see also United States v. McCaskill*, 676 F.2d 995 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982). The N.C. Supreme Court reiterated the standard in *State v. Walker*, 316 N.C. 33, 340 S.E.2d 80 (1986):

> The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. Therefore, the test for "plain error" places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection.

*Id.* at 39, 340 S.E.2d at 83-84 (citations omitted). It is with this standard in mind that we review defendant's appeal.

In *Lucas*, the Supreme Court analyzed the North Carolina sentencing enhancement located in N.C. Gen. Stat. § 15A-1340.16A in light of the *Jones* and *Apprendi* holdings. Those holdings state that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 455 (2000). The N.C. Supreme Court found that the enhancement did increase the penalty beyond the prescribed statutory maximum. See *Lucas*, 353 N.C. at 592-98, 548 S.E.2d at 728-32 (for full discussion on North Carolina's sentencing structure). Thus, the Court held as follows:

> [W]e hold that in *every* instance where the State seeks an enhanced sentence pursuant to N.C.G.S. § 15A-1340.16A, *it must allege the statutory factors supporting the enhancement in an indictment . . . and submit those factors to the jury*. If the jury

returns a guilty verdict that includes these factors, the trial judge shall make the finding set out in the statute and impose an enhanced sentence.

*Id.* at 597-98, 548 S.E.2d at 731 (emphasis added). The Supreme Court did not find the enhancement unconstitutional on its face, only that it requires (1) the factors alleged in an indictment, (2) submitted to the jury, and (3) proven beyond a reasonable doubt. As long as this procedure is followed, the enhancement is constitutionally sound.

Neither of the three requirements set forth in *Lucas* were fulfilled in the present case. There is therefore error. However, this does not end our discussion under plain error review. The key now is to determine whether the jury would have reached a different verdict had the error not been committed. More precisely, could the jury, having been given the task of determining whether or not defendant used a firearm during the kidnapping of the two store employees who were stocking shelves, have answered in the negative.

The State argues that, because the evidence of the fact that defendant had a firearm in his possession during the commission of the kidnapping is overwhelming and uncontroverted, it is impossible that the jury could have come back with an answer in the negative. The jury convicted defendant of robbery with a dangerous weapon of the same two victims. The facts at trial showed that the dangerous weapon involved was a firearm. Defendant committed the robbery and the kidnapping simultaneously. All witnesses saw the gun. Defendant put on no evidence to refute the testimony of the State's witnesses.

The State cites as authority for its "overwhelming and uncontroverted" proposition *Neder v. United States*, 527 U.S. 1, 17, 144 L. Ed. 2d 35, 52 (1999). In *Neder*, a federal district court judge refused to give an instruction to the jury on an element of the offense charged [materiality in tax fraud]. While this was found to be error, the Supreme Court of the United States found it to be harmless error for two reasons: (1) While the jury did not make a finding of materiality, no jury could reasonably find that the accused's failure to report a substantial amount of income on his tax returns was not a material matter, where the government's evidence supporting materiality was so overwhelming that the accused did not argue to the jury, and does not argue on review, that his false statements of income could be found immaterial; and (2) where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and

STATE v. McNAIR

[146 N.C. App. 674 (2001)]

was supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless. *Id.* The U.S. Supreme Court justified its holding two ways, explaining that its approach reaches an appropriate balance between society's interest in punishing the guilty and the method by which decisions of guilt are made, and does not fundamentally undermine the purposes of the U.S. Constitution's Sixth Amendment guarantee of the right to a jury trial. *Id.*

Under North Carolina law, "[i]n deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79. Here there is no defect in the instruction; just no instruction. However, we feel that our law and *Neder* are harmonious.

It appears from the record to this Court beyond a reasonable doubt that defendant indeed possessed a firearm during the commission of the kidnapping of the two employees of the Bi-Lo. The evidence in the record is overwhelming and uncontroverted, and to such an extent that the jury could not have come to a differing conclusion. We hold that, while it was error not to submit to the jury the specific question of fact whether defendant possessed a firearm during the commission of the kidnapping, it was not plain error, because there is no " 'reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial,' " and defendant has failed to overcome its heavy burden. *State v. Kelly*, 120 N.C. App. 821, 825, 463 S.E.2d 812, 814 (1995) (quoting *State v. Parrish*, 275 N.C. 69, 76, 165 S.E.2d 230, 235 (1969)); *see State v. Wallace*, 104 N.C. App. 498, 410 S.E.2d 226 (1991), *dismissal allowed*, *disc. review denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992) (trial court's failure to instruct on presence in acting in concert case did not have a probable impact on jury's finding of guilt because there was substantial evidence of defendant's constructive presence at the scene).

[4] This only resolves two of the requirements handed down by *Lucas*, namely that the facts are submitted to the jury and proven beyond a reasonable doubt. The third requirement of *Lucas* presents an entirely different dilemma as the indictment is now defective. Neither party addressed this issue; however, in the interest of justice, we address the issue, and *sua sponte* make a motion for arrest of

judgment. "A motion in arrest of judgment is generally made after verdict to prevent entry of judgment based on a defective indictment or some fatal defect on the face of the record proper." *State v. Davis*, 282 N.C. 107, 117, 191 S.E.2d 664, 670 (1972).

This Court reviewed the law of fatally defective indictments in *State v. Wilson*, 128 N.C. App. 688, 497 S.E.2d 416 (1998):

> Where there is a fatal defect in the indictment . . . which appears on the face of the record, a judgment which is entered notwithstanding said defect is subject to a motion in arrest of judgment. A defect in an indictment is considered fatal if it "wholly fails to charge some offense . . . or fails to state some essential and necessary element of the offense of which the defendant is found guilty." When such a defect is present, it is well established that a motion in arrest of judgment may be made at any time in any court having jurisdiction over the matter, even if raised for the first time on appeal.

*Id.* at 691, 497 S.E.2d at 419 (footnotes omitted).

In the present case and under current law, the indictment is fatally defective because it fails to allege the facts to support the firearm enhancement found in N.C. Gen. Stat. § 15A-1340.16A as required by *Lucas*.

In its brief, the State cites *United States v. Mojica-Baez*, 229 F.3d 292 (1st Cir. 2000), *cert. denied sub nom. Reyes-Hernandez v. U.S.*, —— U.S. ——, 150 L. Ed. 2d 209, *cert. denied sub nom. Mojica-Baez v. U.S.*, —— U.S. ——, —— L. Ed. 2d ——, *cert. denied sub nom. Ramos-Cartagena v. U.S.*, —— U.S. ——, —— L. Ed. 2d —— (2001), in which the First Circuit upheld an indictment under a *Neder* plain error analysis. The facts of that case are analogous to the present case before us. In *Mojica-Baez*, the defendants were indicted and convicted of a crime and had their sentences increased because of the federal firearm enhancement. *Mojica-Baez*, 229 F.3d at 306. Subsequently, the Supreme Court ruled that certain factors which enhance the sentence must be alleged in the indictment and submitted to the jury, because they were elements to a separate offense and not merely sentencing factors. *See Castillo v. United States*, 530 U.S. 120, 147 L. Ed. 2d 94 (2000); *Apprendi*, 530 U.S. 466, 147 L. Ed. 2d 435. Thus, the defendant in that case made the argument that, because of this, the indictments were defective, and not subject to harmless

and/or plain error analysis because these are not trial errors, but structural errors requiring reversal. *Mojica-Baez*, 229 F.3d at 307-08. The court in that case held that the indictment was nevertheless subject to harmless error:

> No interest in safeguarding fair trials or vindicating compelling constitutional policies would be served by classifying the error here as structural. Nor do we think the integrity of the judicial system is implicated. *The reason the indictment in this case did not specify that a semiautomatic assault weapon or AK-47 had been used in the robbery was that circuit precedent at the time did not require it* . . . . It is one thing to vacate a conviction or sentence where the prosecutor failed to indict in accordance with the current state of the law. It is quite another thing to vacate a conviction or sentence based on an indictment *that was entirely proper at the time.*

*Id.* at 310 (emphasis added). We find this reasoning unpersuasive. *See United States v. Tran*, 234 F.3d 798 (2d Cir. 2000) (stating that *Mojica-Baez* failed to address the failure of an indictment to charge an offense as a jurisdictional matter, and that the Tenth Circuit case *United States v. Prentiss*, 206 F.3d 960 (10th Cir. 2000), had "convincingly reasoned that *Neder* was inapplicable to the failure of an indictment to state an offense"). *Tran*, 234 F.3d at 809 n.2.

Our Supreme Court has ruled that the enhancement found in our statutes was constitutional as long as the requirements of *Jones* and *Apprendi* were followed. It bears repeating what those requirements are: (1) the factors supporting the enhancement must be alleged in an indictment; (2) the issue must be submitted to a jury; and (3) the factors must be proven beyond a reasonable doubt. If these three requirements are not met, the enhancement is unconstitutional. Here, the State did not fulfill these requirements. It therefore follows that the enhancements at the time of trial and sentencing were impermissible under the test set forth by our Supreme Court in *Lucas*.

Accordingly, as to No. 00 CRS 023236 (two counts of second degree kidnapping), we vacate the 60-month enhanced sentence based on the firearm possession, judgment is arrested, and the case is remanded for resentencing.

As to No. 98 CRS 040303 (robbery with dangerous weapon), No. 00 CRS 023235 (two counts of robbery with dangerous weapon), No. 00 CRS 023237 (robbery with dangerous weapon and first degree kidnapping), no error.

Judges MARTIN and BIGGS concur.