STATE OF NORTH CAROLINA v. DARRYL MAURICE COBB

No. COA01-501

(Filed 7 May 2002)

**1. Constitutional Law— court-appointed attorney—motion to remove**

The trial court did not err in a prosecution for a first-degree murder at a rest stop by denying defendant's motion to remove one of his court-appointed attorneys where the attorney had represented defendants in more than twenty-five non-capital murder cases and in four capital murder cases during 33 years of practice; the attorney filed 29 pretrial motions, conducted extensive cross-examination of the State's witnesses, and made timely objections; and the conflicts between defendant and his attorney related to trial strategies and tactics.

**2. Evidence— value of murder victim's car—lab technician's testimony**

The trial court did not err in a first-degree murder prosecution by allowing a crime lab technician to testify that the victim's car had a value greater than $1,000. The lab technician's experience and close personal observation of the vehicle, viewed alongside evidence as to how the victim maintained the vehicle, provides an ample foundation for an opinion as to its value.

STATE v. COBB

[150 N.C. App. 31 (2002)]

### 3. Criminal Law— prosecutor's argument—defendant's failure to contradict evidence

There was no error in a first-degree murder prosecution where defendant contended the prosecutor improperly commented on his decision not to present evidence, but the prosecutor was commenting on defendant's inability to exculpate himself or on his failure to contradict the evidence presented by the State rather than on defendant's failure to testify.

### 4. Kidnapping— murder victim—sufficiency of evidence

There was substantial evidence to support a conviction for first-degree kidnapping where the evidence indicated that defendant left his home in Havelock intending to travel to Raleigh; he stopped at a particular rest area, as was his habit; and his body was found two miles from the rest area alongside a dirt road which was not within his course of travel. It was reasonable for a jury to infer that the victim was forced to abandon his plan to drive to Raleigh and to drive to the location where his body was found. Furthermore, evidence that defendant was in possession of the victim's vehicle and the murder weapon and that he had been living in an inoperable truck in the rest area reasonably pointed to defendant as the individual who forced the victim to abandon his plan.

### 5. Robbery— murder victim—sufficiency of evidence

The trial court did not err by submitting armed robbery to the jury where defendant contended that the State never presented any evidence that defendant was in possession of the murder victim's wallet, but the victim carried a wallet containing approximately $100 in cash when he left his home, his body was found in a state of decomposition consistent with being killed on the date he had been reported missing, defendant had been evicted for failing to pay rent and had been living in an inoperable truck, and defendant was found to be in possession of the murder weapon and the victim's vehicle.

### 6. Larceny— theft of wallet and automobile—no temporal break

Judgment was arrested on a felonious larceny conviction where a murder victim's wallet and automobile were taken, defendant was also convicted of armed robbery, and the circumstances of the case do not support a temporal break between taking the wallet and taking the automobile.

STATE v. COBB

[150 N.C. App. 31 (2002)]

**7. Homicide— felony murder—instructions—multiple thefts**

There was no error in the instructions in a felony murder prosecution where defendant contended that the court's failure to specifically instruct the jury as to which property was the subject of a robbery charge and which the subject of a felonious larceny charge resulted in an improper determination of which felony formed the basis of the murder conviction.

**8. Homicide— first-degree murder—no evidence of how victim killed—no evidence of struggle or provocation—no instruction on second-degree murder**

The trial court was not required to instruct on the lesser included offense of second-degree murder where defendant contended that he was entitled to the instruction because the State did not present evidence detailing when or how the victim had been killed, but the record does not indicate a struggle or provocation.

Appeal by defendant from judgments entered 7 August 2000 by Judge Benjamin G. Alford in Craven County Superior Court. Heard in the Court of Appeals 13 February 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas G. Meacham, Jr., for the State.*

*McCotter, McAfee & Ashton, PLLC, by Rudolph A. Ashton, III, for defendant-appellant.*

WALKER, Judge.

Defendant appeals his convictions for first degree murder under the felony murder rule, first degree kidnapping, robbery with a dangerous weapon, and felony larceny. The State's evidence tends to show the following: On 26 May 1999 at approximately 3:30 a.m., Leonard George Baggie (the victim) left his home in Havelock carrying his wallet which contained approximately $100 in cash. From Havelock, he traveled north along Highway 70 driving a black 1990 Honda Accord. He was ultimately heading to the Raleigh-Durham International Airport for a 7:00 a.m. flight to California. According to the victim's wife, the victim had a health condition which required him to urinate frequently. Consequently, he had a habit of stopping at the Clark's Rest Area located on Highway 70 when he traveled in that direction.

Later that evening, the victim's brother telephoned from California and informed the victim's wife that he was not on his scheduled flight. She then called the authorities and reported her husband missing.

Three days earlier, while on patrol at the Clark's Rest Area, an inspector with the North Carolina Division of Motor Vehicles, noticed a silver pickup truck which had been parked there for several hours. Defendant occupied the truck and, upon inquiry, informed the inspector that the master cylinder had broken and he was waiting for a replacement part. The inspector wrote down the truck's license number and left. When he returned for his final patrol of the evening, he noted that defendant and the truck were still at the rest area.

Defendant's uncle testified that he had loaned defendant the truck in January of 1999. He later decided to give the truck to defendant but wanted it returned so that he could remove its license plate. However, he was unable to locate defendant or the truck. In early June of 1999, defendant's uncle was informed that the truck had been abandoned at the Clark's Rest Area. When he went to retrieve it, he discovered it was inoperable and had it towed to his home. Upon searching the truck, investigators discovered defendant's personal mail and other items which suggested he had been living out of the truck.

The State also presented evidence which indicated that in September of 1998, defendant had been renting a duplex in Oriental. However, by December of 1998, defendant had ceased paying rent and was eventually evicted. On 20 May 1999, the sheriff's department padlocked the duplex.

On 7 June 1999, the victim's body was discovered in a wooded area approximately two miles from the Clark's Rest Area. The victim was found in a partially decomposed state about ten feet from the side of a dirt road. A forensic pathologist testified that the victim died from a single gunshot wound to the head and that the degree of decomposition was consistent with the victim having died around the date his wife reported his disappearance.

At approximately 12:30 a.m. on 9 June 1999, while on patrol in the Minnesott Beach area, two sheriff's deputies noticed a dark-colored Honda Accord parked down a deserted dead-end road. One deputy approached the vehicle and observed defendant asleep inside. He tapped on the window and awakened defendant. Defendant then

started the vehicle and attempted to drive away, only to stop when the deputy ordered him to turn off the vehicle.

Upon his arrest, defendant was found to have a .22 caliber handgun in his possession. A firearms expert opined that this handgun was the weapon used to murder the victim. In addition, defendant had replaced the vehicle's license plate and had removed a number of decals and stickers. Nonetheless, investigators traced the vehicle to the victim by using the vehicle identification number. Defendant's clothing, personal mail, and various other personal items were inside the vehicle.

Defendant did not present evidence. Thereafter, the jury found him guilty of murder during the perpetration of a robbery with a dangerous weapon, first degree kidnapping, and felony larceny. The trial court then arrested judgment on the robbery with a dangerous weapon conviction.

I.

[1] Defendant first contends the trial court erred in denying his motion to remove one of his court-appointed attorneys. The record shows that on 19 July 2000, defendant moved the trial court *pro se* to remove one of his two court-appointed attorneys based on his belief that this attorney was not providing adequate representation. In his motion, defendant alleged the attorney had failed to subpoena alibi witnesses, had neglected to replace a private investigator who had an apparent conflict of interest, and had formed an opinion as to his guilt. Defendant also stated his concern that this attorney was merely attempting to prevent his "execution" rather than "win" his case. After hearing evidence, the trial court concluded that defendant had not shown "good and adequate reason for the removal" of his court-appointed attorney and denied the motion.

"While it is a fundamental principle that an indigent defendant in a serious criminal prosecution must have counsel appointed to represent him, . . . an indigent defendant does not have the right to have counsel *of his choice* appointed to represent him." *State v. Thacker*, 301 N.C. 348, 351-52, 271 S.E.2d 252, 255 (1980) (citations omitted) (emphasis in original); *State v. Anderson*, 350 N.C. 152, 166-67, 513 S.E.2d 296, 305, *cert. denied*, 528 U.S. 973, 145 L. Ed. 2d 326 (1999). Nevertheless, where an appointed attorney has demonstrated incompetency or a conflict arises between a defendant and his appointed attorney such that counsel is rendered ineffective, a trial

court is constitutionally obligated to appoint a substitute attorney. *Id.*; *see also State v. Gary*, 348 N.C. 510, 515-16, 501 S.E.2d 57, 61-62 (1998).

When a defendant requests the removal of his court-appointed attorney, the trial court may properly deny the request if it appears "that the original counsel is reasonably competent to present defendant's case and the nature of the conflict between defendant and counsel is not such as would render counsel incompetent or ineffective to represent *that* defendant. . . ." *Thacker*, 301 N.C. at 352, 271 S.E.2d at 255 (emphasis in original). Here, the record shows that the attorney which defendant sought to have removed had represented defendants in more than twenty-five non-capital murder cases and in four capital murder cases during his thirty-three years of practice. The record further shows that this attorney filed approximately twenty-nine pre-trial motions, presented opening and closing statements, conducted extensive cross-examination of the State's witnesses, and made timely objections. We conclude the attorney was clearly qualified to represent defendant in this case. Furthermore, the conflicts defendant had with this attorney related to trial strategies and tactics which our Supreme Court has previously held is insufficient to require the removal of court-appointed counsel. *See Gary*, 348 N.C. at 514-16, 501 S.E.2d at 61-62; *see also State v. Robinson*, 290 N.C. 56, 66, 224 S.E.2d 174, 179 (1976). Accordingly, we conclude defendant was provided with effective assistance of counsel and overrule this assignment of error.

## II.

[2] Defendant next contends the trial court erred in allowing a crime lab technician to testify that the victim's 1990 Honda Accord had a market value greater than $1,000. He maintains the technician lacked any knowledge or experience so as to "intelligently value" the vehicle.

Generally, "a non-expert witness who has knowledge of value gained from experience, information, and observation may give his opinion of the value of personal property." *Williams v. Chrysler-Plymouth, Inc.*, 48 N.C. App. 308, 317, 269 S.E.2d 184, 190, *disc. rev. denied*, 301 N.C. 406, 273 S.E.2d 451 (1980); *see also Maintenance Equipment Co., Inc. v. Godley Builders*, 107 N.C. App. 343, 355, 420 S.E.2d 199, 206 (1992), *disc. rev. denied*, 333 N.C. 345, 426 S.E.2d 707 (1993). Any weight to be given to the opinion is for the trier-of-fact to determine. *Id.*; *see also State v. Edmondson*, 70 N.C. App. 426, 430,

320 S.E.2d 315, 318 (1983), *aff'd*, 316 N.C. 187, 340 S.E.2d 110 (1986) ("The basis or circumstances behind a non-expert opinion affect only the weight of the evidence, not its admissibility").

Here, the victim's wife testified that the victim kept his vehicle "clean" and "vacuumed to the tee." Thereafter, prior to providing his opinion as to the value of the vehicle, the technician testified as to his having twenty years of experience in law enforcement and that he had closely examined the interior, exterior, and trunk of the vehicle for fingerprints and bloodstains. He then stated that, in his opinion, the vehicle was "worth more than $1,000." The lab technician's experience and close personal observation of the victim's vehicle, when viewed alongside the evidence as to how the victim maintained the vehicle, provides an ample foundation for an opinion as to its value. Therefore, we conclude the trial court did not err in admitting this testimony.

## III.

[3] Next, defendant asserts the trial court committed reversible error by permitting the State to argue to the jury that he had failed to testify and that he did not offer any evidence. Defendant identifies nine separate statements made by the prosecutor in closing argument, which he contends were improper comments on his decision not to present evidence:

A. If either side in this case thought there was important evidence for you to hear that they had, you would have heard it. . . . You can use your common sense and say, well, there must not be any evidence that contradicts it; otherwise, I would have heard it . . . If there was a witness that could come into this courtroom and could contradict the evidence you heard from the state, you know they would have. You know the evidence you've heard in this case is the evidence there is. And if its uncontradicted, that means there has been no evidence offered to contradict it, no evidence to the contrary.

B. Did you hear somebody say, "Yes, I came to the rest stop, picked up the defendant, and gave him a ride to wherever?"

C. And all they have is to say, "We can't answer any of these issues. We can't deny the defendant was there."

D. If there had been that witness that could have testified about where this defendant was or what he was doing, they

would have called him but they didn't. Instead they picked and nitpicked, and are going to try to during their closing arguments, the state's evidence.

E. Have you heard a witness testify that there was anybody else that was living in a car at the rest stop before Mr. Baggie disappeared that left his truck and some of his personal property at the rest stop? No you have not.

F. And you've heard no other explanation for why that gun was in the defendant's waistband and he was in the victim's car by the testimony of other witnesses coming forward in this courtroom.

G. You have not heard any witness testify that is not a fact.

H. If they could of [sic] found somebody to give you a different opinion, you would of [sic] heard it; but you didn't, because there is no question.

I. Why was he living in the truck? Why didn't he call his family? What was he doing there with that gun? . . . I can't answer those questions. I cannot go into that man's mind and answer those questions for you. That's not required ladies and gentlemen. When you step back and look at the big picture that is not required.

A defendant's election to exercise his constitutional protection against self-incrimination may not be used against him. *See State v. Baymon*, 336 N.C. 748, 758, 446 S.E.2d 1, 6 (1994). Accordingly, any commentary by the State directed towards a defendant's failure to testify or present evidence violates the defendant's constitutional rights. *Id.* "A statement that may be interpreted as commenting on a defendant's decision not to testify is improper if the jury would naturally and necessarily understand the statement to be a comment on the failure of the accused to testify." *State v. Mitchell*, 353 N.C. 309, 326, 543 S.E.2d 830, 840-41, *cert. denied*, 389 U.S. 961, 151 L. Ed. 2d 389 (2001) (*citing State v. Rouse*, 339 N.C. 59, 95-96, 451 S.E.2d 543, 563 (1994), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995)). Notwithstanding this prohibition, our Courts have consistently held that the State is permitted to comment on a defendant's failure to produce exculpatory evidence or to contradict evidence which the State has presented. *See e.g. State v. Mason*, 315 N.C. 724, 340 S.E.2d 430 (1986); *State v. Jordan*, 305 N.C. 274, 287 S.E.2d 827 (1982); *State v. Barfield*, 127 N.C. App. 399, 489 S.E.2d 905 (1997); *State v. Billings*, 104 N.C. App. 362, 409 S.E.2d 707 (1991).

Our review of the above statements leads us to conclude the prosecutor was not commenting on defendant's failure to testify, but rather on his inability to exculpate himself or on his failure to contradict the evidence presented by the State. *See State v. McNair*, 146 N.C. App. 674, 679-80, 554 S.E.2d 665, 669 (2001). Additionally, the record shows that defendant did not object at trial to many of the statements he now claims were improper. *See Mitchell*, 353 N.C. at 324, 543 S.E.2d at 839 ("Where a defendant fails to object to the closing arguments at trial, defendant must establish that the remarks were so grossly improper that the trial court abused its discretion by failing to intervene *ex mero motu*"). The statements were neither a direct nor an inferential commentary on defendant's constitutionally protected right to refuse to testify, which would have required the trial court to intervene *ex mero moto*. Furthermore, the trial court instructed the jury that defendant's silence was not to influence its decision in any way. We overrule defendant's assignment of error.

IV.

Defendant next contends the trial court erred in failing to grant his motion to dismiss each of the charges. "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). Thus, "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." *Powell*, 299 N.C. at 98, 261 S.E.2d at 117. "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998).

First Degree Kidnapping

[4] Defendant maintains the State failed to provide substantial evidence to support his conviction for first degree kidnapping. N.C. Gen. Stat. § 14-39(a) states in pertinent part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . .

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony . . . .

N.C. Gen. Stat. § 14-39(a) (1999). "If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree . . . ." N.C. Gen. Stat. § 14-39(b).

"The indictment in a kidnapping case must allege the purpose or purposes upon which the State intends to rely, and the State is restricted at trial to proving the purposes alleged in the indictment." *State v. Moore,* 315 N.C. 738, 743, 340 S.E.2d 401, 404 (1986); *see also State v. Ray,* 149 N.C. App. 137, 149, 560 S.E.2d 211, 219 (2002). Here, the indictment alleges defendant removed the victim from one place to another without his consent for the purpose of committing robbery with a dangerous weapon. Defendant contends the only evidence presented to support this allegation was that the victim's body had been found about two miles from the Clark's Rest Area and that he had been found sleeping in the victim's vehicle approximately two weeks later. Without more evidence, defendant argues that the jury was left to only speculate as to whether he entered the victim's vehicle at the rest area and under what circumstances he removed the victim to the location where the victim's body was found.

In support of his contention, defendant cites our Supreme Court's holdings in *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703 (1983) and *State v. Skeels,* 346 N.C. 147, 484 S.E.2d 390 (1997). In *Jackson,* the central issue concerned whether a defendant's false representation amounted to a "coercion of the will" such that it negated a victim's apparent consent. The State's evidence tended to show the defendant had convinced the victim to give him a ride to a nearby town using a ruse that he needed jumper cables for a broken down pickup truck. The victim's body was later discovered in his vehicle. He had been shot twice in the head and his wallet was missing. The State asserted that the defendant's misrepresentation of his intentions upon entering the victim's vehicle constituted fraud such that the victim had not

consented to giving the defendant a ride. Therefore, the State argued that the defendant had unlawfully removed the victim from the place where the defendant had entered the vehicle to the place where the victim had been shot. The Supreme Court disagreed, noting that the evidence equally supported an inference that the victim, for his own reasons, had driven to the location where he had been shot. Thus, the Court held the evidence allowed for no more than a mere conjecture as to whether the defendant's misrepresentation amounted to a confinement, restraint, or removal of the victim against his will. *Jackson,* 309 N.C. at 30, 40-41, 305 S.E.2d at 708, 714.

In *Skeels,* the State's evidence tended to show the defendant shot the victim in the head, neck, and back and stole his pickup truck. On the same day, defendant was arrested when he was observed sitting across the street from a bank with his head wrapped in gauze. He had a gun with him and a note which indicated his intention of robbing the bank. However, the body of the victim was found six days later in an area off the state highway. The only evidence connecting the defendant to the victim's truck was that a witness had seen a man with his head wrapped in gauze driving the truck on the day the defendant was arrested. Citing *Jackson,* the Supreme Court arrested judgment on the defendant's kidnapping conviction. The Court stated, "There was no evidence regarding the circumstances under which the defendant entered the victim's truck or under what circumstances the victim drove to the area where he was killed." *Skeels,* 346 N.C. at 150-51, 484 S.E.2d at 391-92.

We find the circumstances surrounding the victim's killing in this case to be distinguishable from those present in *Jackson* and *Skeels.* In those cases, the evidence failed to show that the victim had been forced to abandon his own plan against his will at the direction of another. *See State v. Barbour,* 278 N.C. 449, 456, 180 S.E.2d 115, 119 (1971), *cert. denied,* 404 U.S. 1023, 30 L. Ed. 2d 673 (1972). In contrast, the evidence here indicates the victim left his home in Havelock with the intention of traveling to Raleigh. As was his habit, the victim stopped at the Clark's Rest Area. His body was found two miles from the rest area alongside a dirt road which was not within his course of travel. From this evidence, it is reasonable for a jury to infer the victim had been forced to abandon his plan to drive to Raleigh and drive to the location where his body was found. Furthermore, the finding of defendant in possession of the victim's vehicle and the murder weapon, along with evidence that he had been living out of an inoperable truck at the Clark's Rest Area, reasonably points to him as the

individual who forced the victim to abandon his plan. Accordingly, we find no error in the trial court's denial of defendant's motion to dismiss the first degree kidnapping charge.

### Robbery with a Dangerous Weapon

**[5]** Defendant contends the trial court should have dismissed the robbery with a dangerous weapon charge based on his assertion that the State had presented no direct evidence that he was ever in possession of the victim's wallet.

Our Supreme Court has held that under N.C. Gen. Stat. § 14-87, robbery with a dangerous weapon is defined as "the taking of the personal property of another in his presence or from his person without his consent by endangering or threatening his life with a firearm or other deadly weapon with the taker knowing that he is not entitled to the property and the taker intending to permanently deprive the owner of the property." *Powell*, 299 N.C. at 102, 261 S.E.2d at 119. "To be found guilty of robbery with a dangerous weapon, the defendant's threatened use or use of a dangerous weapon must precede or be concomitant with the taking, or be so joined by time and circumstances with the taking as to be part of one continuous transaction." *State v. Olson*, 330 N.C. 557, 566, 411 S.E.2d 592, 597 (1992) (*citing State v. Hope*, 317 N.C. 302, 306, 345 S.E.2d 361, 364 (1986)).

When viewed in a light most favorable to the State, the evidence showed that when the victim left his home, he carried with him a wallet containing approximately $100 in cash. The evidence further showed defendant had been evicted from his apartment for failure to pay rent and had been living in an inoperable truck. The victim's body was found in a state of decomposition which was consistent with his having been killed on the date he had been reported missing. Although defendant did not have the victim's wallet at the time of his arrest, he was found to be in possession of the murder weapon and the victim's vehicle. From this evidence, a reasonaly jury could conclude defendant had the motive, means, and opportunity such that he had robbed the victim of his wallet using the murder weapon. Thus, we conclude the trial court did not err in submitting the robbery with a dangerous weapon charge to the jury.

### Felony Larceny

**[6]** Defendant argues the charge of felonious larceny should have been dismissed because the evidence did not establish a temporal

break between his alleged taking of the victim's wallet and his alleged larceny of the victim's vehicle.

Felony larceny is a lesser included offense of robbery with a dangerous weapon. *State v. White*, 322 N.C. 506, 518, 369 S.E.2d 813, 819 (1988). As such, the constitutional prohibition against double jeopardy requires that, in order for a defendant to be convicted of both felonious larceny and robbery with a dangerous weapon, the evidence must establish that the defendant committed two separate and distinct takings. *See State v. Jordan*, 128 N.C. App. 469, 474, 495 S.E.2d 732, 736, *disc. rev. denied*, 348 N.C. 287, 501 S.E.2d 914 (1998); *see also State v. Adams*, 331 N.C. 317, 333, 416 S.E.2d 380, 389 (1992) ("A single larceny offense is committed when, as part of one continuous act or transaction, a perpetrator steals several items at the same time and place") (citations omitted).

Defendant argues the trial court should have merged the robbery with a dangerous weapon charge with the felony larceny charge because the evidence fails to establish that his alleged taking of the victim's vehicle was separate and apart from his taking of the victim's wallet. In response, the State contends that since the victim's body was found in a heavily wooded area and forensic tests revealed no evidence of blood on the interior, exterior, or trunk of the victim's vehicle, a jury could reasonably conclude that defendant had murdered the victim in the wooded area and thereafter had taken the vehicle. The State further maintains it provided sufficient evidence to support a jury finding that defendant had taken the victim's wallet either at the rest area or shortly after arriving at the wooded area.

We agree with defendant's assertion that the circumstances of this case do not support a conclusion that a temporal break occurred between the taking of the victim's wallet and vehicle but instead involved one continuous transaction. Therefore, the judgment pursuant to defendant's conviction for felonious larceny is arrested.

## First Degree Murder

Defendant filed a motion to dismiss the first degree murder charge based on his contention that the first degree kidnapping, robbery with a dangerous weapon, and felony larceny charges should not have been submitted to the jury; therefore, the evidence did not support a finding that he had committed first degree murder under the felony murder rule. As we have already concluded that the trial court

did not err in submitting the charges of first degree kidnapping and robbery with a dangerous weapon, we likewise conclude the trial court did not err in denying defendant's motion to dismiss the first degree murder charge.

V.

[7] Defendant next assigns as error the trial court's failure to specifically instruct the jury as to which of the victim's property was the subject of the robbery with a dangerous weapon and which property was the subject of the felonious larceny. He argues that this error led the jury to confuse the evidence associated with each of these charges and ultimately resulted in its improper determination of which felony formed the basis of his first degree murder conviction.

Prior to its deliberations, the trial court instructed the jury as to the elements of each charge raised by the evidence. With respect to the felony larceny charge, the trial court also instructed on the lesser included offenses of non-felonious larceny, felonious possession of stolen goods, and non-felonious possession of stolen goods. During its instruction on felonious possession of stolen goods, the trial court noted for the jury that the victim's vehicle was the subject of the charge. At the conclusion of all the instructions, the trial court asked the parties whether any "corrections" or "additions" needed to be made before the jury proceeded to deliberate. Defendant responded that as far as he was concerned the instructions were clear and he objected to any further instruction.

Under the law of this State, a trial court, in instructing a jury, must charge every essential element of the offense, but is not required to "state, summarize, or recapitulate the evidence, or to explain the application of the law to the evidence." N.C. Gen. Stat. § 15A-1232; see also State v. Hairr, 244 N.C. 506, 509, 94 S.E.2d 472, 474 (1956); and State v. Wallace, 104 N.C. App. 498, 504, 410 S.E.2d 226, 230 (1991), disc. rev. denied, 331 N.C. 290, 416 S.E.2d 398, cert. denied, 506 U.S. 915, 121 L. Ed. 2d 241 (1992). Here, the trial court provided instructions as to each of the elements of robbery with a dangerous weapon and felonious larceny and referenced the victim's vehicle during its instructions on the lesser included offenses of felony larceny. Moreover, when asked, defendant stated that he found the jury instructions to be clear. See State v. McClain, 282 N.C. 396, 400, 193 S.E.2d 113, 115-16 (1972) ("Any error or omission by the court in its review of the evidence in the charge to the jury

must be . . . called to the attention of the court so that the court may have an opportunity to make the appropriate correction"). As the record is devoid of any indication the jury had been confused as to the evidence associated with these two charges, the assignment of error is overruled.

## VI.

[8] Defendant next contends the trial court erred in failing to instruct the jury on second degree murder. He maintains sufficient evidence was presented to warrant this instruction as a lesser included offense of first degree murder.

A defendant is "entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *State v. Leazer*, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (*quoting Keeble v. United States*, 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847 (1973)). Second degree murder is a lesser included offense of first degree murder. *Id.* However, where there is positive, uncontradicted evidence of first degree murder, an instruction on second degree murder is not required. *See State v. Cintron*, 351 N.C. 39, 519 S.E.2d 523 (1999) (per curiam), *cert. denied*, 529 U.S. 1076, 146 L. Ed. 2d 498 (2000); *see also State v. Walker*, 343 N.C. 216, 221-22, 469 S.E.2d 919, 922, *cert. denied*, 519 U.S. 901, 136 L. Ed. 2d 180 (1996).

Defendant argues he was entitled to an instruction on second degree murder because the State did not present evidence detailing "how, when or where" the victim had been killed. However, the record does not show circumstances which would indicate that a struggle took place between defendant and the victim or any other evidence which would permit a jury to conclude that he was provoked into killing the victim. *See State v. Strickland*, 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983) ("If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree . . . and there is no evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder"); *see also State v. Annadale*, 329 N.C. 557, 568, 406 S.E.2d 837, 844 (1991). Accordingly, we conclude the trial court was not required to instruct the jury on second degree murder; therefore, we overrule defendant's assignment of error.

We have reviewed defendant's remaining assignments of error and find them to be without merit. In sum, we affirm defendant's convictions for first degree murder under the felony murder rule, first degree kidnapping, and robbery with a dangerous weapon.

In 99CRS009436, felony larceny, judgment arrested.

In 99CRS006993, first degree murder, no error.

In 99CRS006991, the judgment is vacated and remanded for resentencing.

Judges HUNTER and BRYANT concur.