**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.

JOHNNY CRAIG HARP,
　　　　　　*Defendant-Appellant.*

No. 03-4817

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CR-03-143)

Argued: March 18, 2005

Decided: May 4, 2005

Before WILKINS, Chief Judge, and WIDENER
and TRAXLER, Circuit Judges.

───────────────────

Affirmed by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Widener and Judge Traxler joined.

───────────────────

## COUNSEL

**ARGUED:** John A. Dusenbury, Jr., Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Lawrence Patrick Auld, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Louis C. Allen, III, Federal Public Defender, Greensboro, North Carolina, for Appellant.

Anna Mills Wagoner, United States Attorney, Angela H. Miller, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

---

**OPINION**

WILKINS, Chief Judge:

Johnny Craig Harp appeals his sentence for using a dangerous weapon in committing a bank robbery. *See* 18 U.S.C.A. § 2113(d) (West 2000). We affirm.

## I.

Harp pleaded guilty to the offense of conviction pursuant to a written plea agreement. The presentence report placed Harp's base offense level at 20. *See United States Sentencing Guidelines Manual* § 2B3.1(a) (2002). Harp received a two-level enhancement under § 2B3.1(b)(1) because the property of a financial institution was taken, and a three-level enhancement under § 2B3.1(b)(2)(E) because he possessed a dangerous weapon during the commission of the robbery. Additionally, because Harp had previously been convicted of robbery with a dangerous weapon and felonious possession with the intent to distribute marijuana, he was designated a career offender, and his offense level was increased to 34. *See* U.S.S.G. § 4B1.1. The district court reduced this offense level by three levels for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, resulting in a total offense level of 31. Because of the career offender designation, Harp's Criminal History Category was VI, *see* U.S.S.G. § 4B1.1(b), producing a guideline range of 188-235 months. On the Government's motion, the district court departed downward to account for Harp's substantial assistance in the prosecution of his codefendant, *see* U.S.S.G. § 5K1.1, p.s., sentencing Harp to 128 months' imprisonment.

## II.

Harp maintains that the district court erred in concluding that he met the requirements for designation as a career offender. Because

Harp raises this claim for the first time on appeal, we review for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). To establish plain error, Harp must show that an error occurred, that the error was plain, and that the error affected his substantial rights. *See Olano*, 507 U.S. at 732. Even if Harp makes this three-part showing, correction of the error remains within our discretion, which we "should not exercise . . . unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)) (second alteration in original).

For Harp to be designated a career offender, the Government must establish (1) that Harp was at least 18 at the time of the instant offense, (2) that the instant offense is a felony that is either a "crime of violence" or a "controlled substance offense," and (3) that Harp had at least two prior felony convictions for either a "crime of violence" or a "controlled substance offense." U.S.S.G. § 4B1.1(a). Harp concedes that the Government established the first two requirements, but he argues that one of his prior convictions considered by the district court—a July 16, 2001 North Carolina conviction for possession with the intent to distribute marijuana—was not a "controlled substance offense" because it was not "punishable by imprisonment for a term exceeding one year." U.S.S.G. § 4B1.2(b).[1] To determine whether a conviction is for a crime punishable by a term of imprisonment exceeding one year, we consider the law in effect at the time of the conviction. *See United States v. Johnson*, 114 F.3d 435, 445 (4th Cir. 1997); *see also United States v. Norris*, 319 F.3d 1278, 1281-83 (10th Cir. 2003) (holding, in the context of determining the sufficiency of an indictment charging possession of a firearm by a felon, that a Kansas conviction was punishable by a term of more than one year because the Kansas sentencing scheme allowed upward departure to

---

[1]Section 4B1.2(b) provides in full that

> [t]he term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

a sentence greater than one year for the prior offense; finding it was immaterial that, after the defendant was convicted of the prior offense, the Kansas Supreme Court held that the Kansas scheme for permitting upward departures was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

Harp maintains that because the specific facts of his case did not provide any basis for imposition of a sentence exceeding one year, his prior conviction was not for an offense punishable by a term of imprisonment of more than one year. He explains that although the maximum aggravated punishment for possession with the intent to distribute marijuana, a Class I felony, is 15 months, the maximum non-aggravated punishment is only 12 months. *See* N.C. Gen. Stat. § 15A-1340.17(c), (d) (LexisNexis 2003). But this court has already rejected such an individualized analysis in *United States v. Jones*, 195 F.3d 205 (4th Cir. 1999), in construing statutory language essentially identical to the language of § 4B1.2(b). In *Jones*, we held, in the context of a felon-in-possession-of-firearm conviction, *see* 18 U.S.C.A. § 922(g)(1) (West 2000), that a prior North Carolina conviction was for "a crime punishable by imprisonment for a term exceeding one year," *id.*, if *any* defendant charged with that crime could receive a sentence of more than one year. *See Jones*, 195 F.3d at 206-07. In so doing, we reasoned:

> [I]n § 922(g)(1), "punishable" is an adjective used to describe "crime." As such, it is more closely linked to the conduct, the crime, than it is to the individual convicted of the conduct. Congress could have written § 922(g)(1) differently had it intended to focus on the individual in particular rather than the crime for which the individual was convicted. Instead of the phrase, "individual convicted . . . of a crime punishable by imprisonment for a term exceeding one year," Congress could have used the phrase, "individual *punished* by imprisonment for a term exceeding one year" or even "individual *sentenced* for imprisonment for a term exceeding one year."

*Id.* at 207 (internal quotation marks omitted) (alterations in original). Thus, to determine whether a conviction is for a crime punishable by a prison term exceeding one year, *Jones* dictates that we consider the

maximum *aggravated* sentence that could be imposed for that crime upon a defendant with the worst possible criminal history. *See id.* at 206-08.

Harp contends that this analysis is no longer appropriate because, in light of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), a defendant's Sixth Amendment rights are violated when he is sentenced under North Carolina law based on aggravating factors that were neither admitted by the defendant nor found by a jury beyond a reasonable doubt, *see State v. Allen*, 601 S.E.2d 299, 306 (N.C. Ct. App.), *review allowed*, 603 S.E.2d 799 (N.C. 2004). We do not agree. Even were we to ignore the fact that *Blakely* had not been decided at the time of Harp's prior conviction,[2] *but see Johnson*, 114 F.3d at 445; *Norris*, 319 F.3d at 1281-83, we would still conclude that *Blakely* did not prevent his drug crime from being punishable by a prison term of more than one year. That is because the Sixth Amendment principle announced in *Apprendi*—and applied in *Blakely* and *United States v. Booker*, 125 S. Ct. 738 (2005)—pertains only to the "*process* by which the elements of [a] crime and other relevant facts must be determined." *United States v. McAllister*, 272 F.3d 228, 232 (4th Cir. 2001). North Carolina courts have already concluded that the state sentencing regime can accommodate the process that *Blakely* demands. *See State v. Harris*, 602 S.E.2d 697, 702 (N.C. Ct. App.) (concluding that aggravating factors may be used to impose a sentence beyond the presumptive term if the factors are found by a jury beyond a reasonable doubt or stipulated to by the defendant or if the defendant waives his right to a jury trial), *temporary stay allowed*, 605 S.E.2d 472 (N.C. 2004); *cf. State v. Lucas*, 548 S.E.2d 712, 731-32 (N.C. 2001) (holding that firearm enhancement could be used to increase the "statutory maximum" sentence if the facts supporting the enhancement are charged in an indictment and found by a jury

---

[2]At the time of Harp's conviction, facts warranting an aggravated sentence were not required to be included in the indictment and found by a jury beyond a reasonable doubt. Prior to *Blakely*, the North Carolina Supreme Court had held that the "statutory maximum" for crimes under its structured sentencing regime was the highest sentence authorized for the crime charged *assuming the highest theoretical criminal history and the aggravated punishment. See State v. Lucas*, 548 S.E.2d 712, 730-31 (N.C. 2001).

beyond a reasonable doubt); *State v. McNair*, 554 S.E.2d 665, 671 (N.C. Ct. App. 2001) (same). Thus, there continues to be no constitutional prohibition to imposing a prison term exceeding one year for the crime of which Harp was convicted. We therefore conclude that Harp's drug conviction was properly considered to be for a "controlled substance offense."

### III.

Harp also argues that his constitutional rights were violated when the district court determined that he was a career offender without the elements of that designation having been charged in an indictment.[3] Because this allegation of error also was not preserved in the district court, we again review for plain error. We need not determine whether the district court plainly erred in this manner and affected Harp's substantial rights in so doing, because even if it did, we would not exercise our discretion to notice the error. *See United States v. Cotton*, 535 U.S. 625, 633-34 (2002) (holding that sentence exceeding maximum authorized by facts alleged in the indictment would not be vacated on plain error review because evidence supporting judge-found facts on which sentence was based was "overwhelming" and "essentially uncontroverted"). We have already rejected Harp's only argument that he did not meet the career offender requirements. Because Harp had no legitimate defense to the career offender designation, "[t]he real threat . . . to the 'fairness, integrity, and public reputation of judicial proceedings' would be if [Harp] . . . were to receive a sentence prescribed for those [not satisfying the armed career

---

[3]Harp does not challenge the constitutionality of the two-level enhancement he received because property of a financial institution was taken, *see* U.S.S.G. § 2B3.1(b)(1), or the three-level enhancement imposed because he possessed a dangerous weapon during the commission of the robbery, *see* U.S.S.G. § 2B3.1(b)(2)(E). Such a challenge would have been fruitless in any event. Even assuming that the district court plainly erred in imposing those enhancements, their imposition did not affect Harp's substantial rights because it resulted in an offense level of 25. The career offender designation, *see* U.S.S.G. § 4B1.1, which did not rely on these enhancements, and the acceptance of responsibility reduction, *see* U.S.S.G. § 3E1.1, produced a total offense level of 31—from which the district court departed downward to account for Harp's substantial assistance, *see* U.S.S.G. § 5K1.1.

offender criteria] because of an error that was never objected to" in the district court. *Id.* at 634.

### IV.

Harp finally maintains that even if the district court did not err in designating him a career offender, it erred in failing to treat the guidelines as advisory. As with Harp's other claims, we review for plain error because Harp did not raise this issue in the district court. We conclude that Harp has not satisfied the plain error requirements.

Although the failure to treat the guidelines as advisory was plain error,[4] Harp has not demonstrated that it affected his substantial rights. *See United States v. White*, No. 04-4349, slip op. at 11, 20 (4th Cir. Apr. 26, 2005) (holding, with regard to a defendant whose appeal was pending when *Booker* was decided, that it was plain error for the district court to treat the guidelines as mandatory, but that to satisfy the third prong of plain error analysis a defendant must show that he was actually prejudiced). It is apparent from the record here that treating the guidelines as mandatory had nothing to do with the sentence imposed by the district court. Rather, the sentence imposed was based on the sentencing range recommended by the Government to account for the substantial assistance that Harp provided in the prosecution of his codefendant. The forfeited error therefore does not warrant reversal.[5]

### V.

For the foregoing reasons, we find no reversible error and therefore affirm Harp's sentence.

*AFFIRMED*

---

[4]We of course offer no criticism of the district judge, who followed the law and procedure in effect at the time of Harp's sentencing.

[5]Harp also raises challenges in a pro se supplemental brief. We have carefully considered these allegations of error and find them to be without merit.