AGEE, Circuit Judge,
dissenting:
The majority opinion correctly identifies the issue on appeal in this case: whether the analysis set forth in United States v. Harp, 406 F.3d 242 (4th Cir.2005), remains good law in light of the Supreme Court’s decisions in United States v. Rodriquez, 553 U.S. 377, 128 S.Ct. 1783, 170 L.Ed.2d 719 (2008), and Carachuri-Rosendo v. Holder,- U.S. -, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010) (“Carachuri”). Cf. Maj. op. at 241. Because I do not find that either decision compels a result contrary to the plain language of the relevant statutes, I find no error in imposition of an enhanced sentence under 21 U.S.C. § 841(b)(1)(D) and would affirm the district court’s judgment that Simmons’ prior North Carolina state conviction constituted *251 a “felony drug offense” as defined in 21 U.S.C. § 802(44).
I.
The proper starting point is the relevant statutory language. Jimenez v. Quarterman, 555 U.S. 113, 118, 129 S.Ct. 681, 685, 172 L.Ed.2d 475 (2009) (“As with any question of statutory interpretation, our analysis begins with the plain language of the statute.”) (citation omitted); Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993) (“The starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter.”) (quotation and citation omitted). Twenty-one U.S.C. § 841(b)(1)(D) provides that any person convicted of possession with intent to distribute less than 50 kilograms of marijuana “after a prior conviction for a felony drug offense has become final, shall be sentenced to a term of imprisonment of not more than 10 years____” As defined by Congress, a “felony drug offense” is “an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State.... ” 21 U.S.C. § 802(44). Thus, in order for Simmons to be subject to the enhanced sentencing provisions of § 841(b)(1)(D), he must have “a prior conviction for” “an offense that is punishable by imprisonment for more than one year.”
Critical to the analysis is the fact that Congress chose in § 802(44) not to define “felony drug offense” in terms of an individual defendant’s particular sentencing factors, but in terms of the statutorily created offense. As we explained in Harp, because the word “punishable” is an adjective that describes “offense,” the plain language of § 802(44) points to an offense-based analysis rather than a defendant-based analysis. 406 F.3d at 246 (Punishable “is more closely linked to the conduct, the crime, than it is to the individual convicted of the conduct.” (quoting United States v. Jones, 195 F.3d 205, 207 (4th Cir.1999))).
As more fully explained below, the ratio decidendi of neither Carachuri nor Rodriquez alter this common sense reading of the clear terms of § 802(44). That statute thus requires examining whether the statutory offense — not the particular defendant’s conduct — is “punishable” by more than one year of imprisonment. See Jimenez, 129 S.Ct. at 685 (“It is well established that, when the statutory language is plain, we must enforce it according to its terms.”). We must apply the statute as Congress has written it regardless of how other terms in other statutes may be construed. United States v. Ron Pair Enters., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (“The task of resolving the dispute over the meaning of [the statute] begins where all such inquiries must begin: with the language of the statute itself. In this case it is also where the inquiry should end, for where, as here, the statute’s language is plain, the sole function of the courts is to enforce it according to its terms.”) (internal citation and quotation marks omitted).
Had Congress intended a different result, it could have written § 802(44) differently. As this court observed in Jones,
Congress could have written § 922(g)(1) differently had it intended to focus on the individual in particular rather than the crime for which the individual was convicted. Instead of the phrase “individual convicted ... of a crime punishable by imprisonment for a term exceeding one year,” Congress could have used the phrase, “individual punished by imprisonment for a term exceeding one year” or even “individual sentenced for *252 imprisonment for a term exceeding one year.”
195 F.3d at 207 (first two emphases added). Similarly, the construction propounded by the majority rewrites § 802(44) to define “felony drug offense” not as “an offense that is punishable by imprisonment for more than one year,” but as, for example, “an offense for which the defendant is punished by imprisonment for more than one year” or “an offense for which the defendant is actually subject to punishment by imprisonment for more than one year.” This result fails to give effect to the statute as written, and thus usurps the proper role of the Congress. See La. Pub. Seru. Comm’n v. FCC, 476 U.S. 355, 376, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986) (“As we so often admonish, only Congress can rewrite [a] statute.”).
While other statutes written differently and covering different circumstances (as in Carachuri) may be read in other ways, § 802(44) says what it says. Nothing in that statute, or any other, directs us to alter the plain meaning of its terms so as to ignore the scope of N.C. Gen.Stat. § 90-95 and look instead to individual defendants’ particular acts. It bears noting, the issue we resolve here is not one of constitutional mandate, but whether federal jurisprudence set out by the Supreme Court in other cases involving other statutes alters the plain reading of § 802(44).
The sentence Simmons actually received or was individually subject to under N.C. Gen.Stat. § 15A-1340.10, et seq. (“North Carolina Structured Sentencing Act” or “the Act”), does not impact the analysis performed under § 802(44). Simmons did not contend in the district court, or at any time during his appeal, that other defendants charged and convicted under the same North Carolina statute that he was convicted of violating could not have been imprisoned for more than one year. Nor could he have made that argument: N.C. GemStat. § 90-95(a) is a Class I felony and a sentence of up to fifteen months’ incarceration is authorized for its violation. N.C. Gen.Stat. § 15A-1340.17. Consequently, Simmons’ conviction was for an offense that is punishable by imprisonment for a term of more than one year.
II.
The majority concludes the Supreme Court’s decisions in Rodriquez and Carachuri invalidate our prior reading of § 802(44). See, e.g., Harp, 406 F.3d at 247. As an initial matter, the fact that the Supreme Court remanded this case for reconsideration in light of Carachuri- is not a basis upon which that conclusion can rest.
In ordering remand, the Supreme Court did not determine the merits of this ease. A remand indicates only that intervening case law “may affect the outcome of the litigation” and that the court of appeals should have- the opportunity to fully consider the issue in light of the additional precedent. See Tyler v. Cain, 533 U.S. 656, 666 n. 6, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (emphasis added). The purpose of the remand is served by considering the record anew, taking into consideration the potentially relevant case law. As Justice O’Connor, sitting by designation with the original remand panel, explained in oral argument, “it’s certainly possible that the Carachuri-Rosendo case has no relevance to this case at all. It’s just not the same.” (Panel Oral Arg. 16:32.) With respect for the position taken by my colleagues in the majority, I am simply not persuaded that either Carachuri or Rodriquez dictates a contrary position from our earlier decision.
As the majority opinion notes, Carachuri involved an immigration proceeding and the case sub judice concerns criminal sentencing. I agree with the majority that *253 this distinction is not a dispositive one in and of itself. What is dispositive, though, is that the immigration statutes interpreted by the Supreme Court in Carachuri differ in critical respects from the statutes at issue in the case at bar.
Facing deportation, Carachuri sought to apply for discretionary cancellation of removal, something for which he was ineligible if he had previously been “convicted of a[n] ‘aggravated felony.’ ”[1] See 130 S.Ct. at 2583 (citing 8 U.S.C. § 1229b(a)(3)) (brackets in original). The relevant inquiry, then, was whether either of his two Texas convictions for misdemeanor simple drug possession, was an “aggravated felony” under 8 U.S.C. § 1229b(a)(3).
In making that determination, the Supreme Court navigated a “maze of statutory cross-references” to determine whether Caraehuri’s existing state conviction could have been an offense that would be punishable as a federal felony under the Controlled Substances Act (“CSA”) had he been charged and convicted of such in a federal court. 130 S.Ct. at 2581. The need for this hypothetical projection of the state offense into a federal corollary offense arose because under Lopez v. Gonzales, 549 U.S. 47, 127 S.Ct. 625; 166 L.Ed.2d 462 (2006), “[ujnless a state offense is punishable as a federal felony[,] it does not count” as an “aggravated felony” for immigration law purposes. Id. at 55, 127 S.Ct. 625; see also 130 S.Ct. at 2582.
The Supreme Court concluded that “except for simple possession offenses involving isolated categories of drugs not presently at issue, only recidivist simple possession offenses are ‘punishable’ as a federal ‘felony’ under the [CSA].” 130 S.Ct. at 2581 (emphasis omitted). And in footnote three, the Court observed that although 21 U.S.C. § 844(a) did not define separate offenses based on the presence or lack of recidivism, it would nonetheless “view § 844(a)’s felony simple possession provision as separate and distinct from the misdemeanor simple possession offense that section also proscribes.” Id. at 2581 n. 3. Consequently, the Carachuri Court concluded only “recidivist simple possession” offenses “might, conceivably, be an ‘aggravated felony.’ ” Because Carachuri’s Texas conviction was not for a recidivist simple possession offense, the hypothetical federal Lopez corollary offense was not an “aggravated felony” for purposes of 8 U.S.C. § 1229b(a)(3). Carachuri thus did not fall within the statute’s prohibition against seeking withholding of removal.
The majority opinion relies on the foregoing statute-specific analysis in Carachuri to project that Simmons was not “convicted” of an offense punishable by more than one year of incarceration under the Act. The majority accurately notes that Simmons himself — as a first-time offender with a low criminal history score — could not have received a sentence exceeding eight months’ community service punishment. Maj. op. at 243. That conclusion, however, does not axiomatically resolve our case and does not take into account the text and context of the inquiry in Carachuri. That is, in order to perform the requisite state-to-federal offense “extrapolation” analysis in Carachuri, the Supreme Court had to look at the specific characteristics of Carachuri’s conduct underlying the Texas conviction. And because the Court was concerned with how Carachuri was actually charged and the characteristics of his conduct for purposes of determining *254 whether the hypothetical extrapolation would work, the Court’s inquiry was necessarily defendant-specific.
By contrast, the issue in the case at bar is whether the North Carolina offense for which Simmons was convicted was “punishable” by more than one year of incarceration. It does not raise the question (from Carachuri) of what hypothetical offense never prosecuted by a different sovereign the defendant could have been, but was not, charged with, given the specific characteristics underlying his state conviction. Put another way, Simmons’ conviction “serve[s] as [the Court’s] ‘starting place’ ” only insofar as it identifies Simmons’ statutory offense. Cf., Maj. op. at 243 (quoting Carachuri, 130 S.Ct. at 2586). After that determination is made, the circumstances surrounding Simmons’ conviction and the state prosecutor’s charging decision are no longer relevant to the analysis.
Instead, our focus should be on “the terms of the provisions and the ‘commonsense conception’ of those terms.” Carachuri, 130 S.Ct. at 2585. Section 802(44) directs us to the offense prohibited by N.C. Gen.Stat. § 90-95 — rather than to a specific defendant charged thereunder — to determine whether a violation of that statute is one for which punishment of more than one year is authorized. The inquiry here could not be more different from the hypothetical extrapolation and defendant-specific inquiry contained in the Carachuri analysis. At bottom, the dispositive question in this case is whether Simmons’ conviction is for violating a statute that provides for punishment exceeding 12 months’ incarceration. Because a violation of N.C. Gen.Stat. § 90-95(a) is punishable by imprisonment of up to 15 months, the answer to that query is a simple “yes.”[2] Cf. N.C. Gen. Stat. § 15A-1340.17.
For this reason, too, the majority is incorrect that this approach wrongly “assumes that an offender’s conduct alone determines the nature of his ‘crime’ ” for purposes of determining “whether a prior state conviction constitutes a predicate permitting the application of a federal sentencing enhancement.” Maj. op. at 246 (citing Carachuri, 130 S.Ct. at 2581 n. 3, and Rodriquez, 553 U.S. at 386, 128 S.Ct. 1783). Instead, I submit this approach recognizes that the defendant-specific inquiries in Carachuri and Rodriquez do not present the same question at issue here, where the statute directs us to determine how an offense is punishable, rather than how a particular defendant is or could be punished. That is, Congress chose to set the permissible punishment by the parameters of the state statutory offense, not in light of an offender’s individual conduct.
In Carachuri, the Government’s position rested on theorizing what convictions Carachuri could have been prosecuted for, regardless of his actual state statute of conviction. Here, the Government’s position — and mine — rests squarely on Simmons’ actual statute of conviction, N.C. Gen.Stat. § 90-95. Unlike the layers of conjecture required to project what crimes Carachuri could have committed, here no speculation or extrapolation is needed. The core issue is whether the North Carolina statute establishes an offense punishable by imprisonment for more than one year. It does. There is thus no reason to *255 speculate what Simmons’ conduct also could have constituted if prosecuted by a separate sovereign under that sovereign’s different statute.
Contrary to the majority opinion’s implication, the approach I propose does not implicate, let alone run afoul of the principle expressed in Caraehuri that a federal court may not “ex post, enhance the state offense of record just because facts known to it would have authorized a greater penalty under either state or federal law.” 130 S.Ct. at 2586. Indeed, it is the majority’s approach that looks beyond the statute of conviction to postulate whether any additional factors can support additional findings as to the nature and substance of Simmons’ conduct. In contrast, the approach applying an offense-based inquiry looks solely to the statute underlying the conviction and how that offense is punishable and nothing else. Consequently, in addition to being consistent with the plain language of § 802(44), this approach promotes uniformity and consistency because (absent future legislative action) a particular state offense would or would not always be a predicate offense under the Armed Career Criminal Act (“ACCA”) for future federal sentencing purposes. Because the inquiry is offense-specific, all that is needed are the relevant North Carolina statutes: N.C. Gen.Stat. § 90-95, the offense, and N.C. Gen.Stat. § 15A-1340.17, the statutorily authorized sentence for that offense. We would not be required to look at Simmons’ record any further than to identify the offense of conviction.
The majority opinion puts great weight on footnote 3 of Caraehuri to undergird its position; but that weight is more than the footnote can bear. What the Supreme Court said, twice, in that footnote is “the fact of a prior conviction must nonetheless be found before a defendant is subject to felony punishment.” Id. at 2581 n. 3; see also id. (“But the fact of a prior conviction must still be found — if only by a judge and if only by a preponderance of the evidence — before a defendant is subject to felony punishment.”). I submit that is exactly what this dissenting approach does: it looks only at the fact of Simmons’ prior conviction to see that the statute of conviction carries a punishment of up to fifteen months’ incarceration. While the Supreme Court had to parse Carachuri’s Texas conviction to complete the Lopez analysis, no such parsing is needed here.
Significantly, although the Supreme Court had the opportunity in Caraehuri to verify what it means for an offense to be “punishable” as a felony, it did not do so. The Government argued in Caraehuri that “the only statutory text that matters is the word ‘punishable’ in 18 U.S.C. § 924(c)(2): Whatever conduct might be ‘punishable’ as a felony, regardless of whether it actually is so punished or not, is a felony for immigration law purposes.” Carachuri, 130 S.Ct. at 2587. Particularly relevant for our case, the Supreme Court did not address this argument on its textual merits. To quote the Court, the reason it rejected the Government’s “punishable” language argument was that in performing the Lopez analysis, “the circumstances of Carachuri-Rosendo’s prosecution were not identical to those hypothesized by the Government.” Id. That is, the facts in Carachuri did not align -with the Government’s argument and could not “be reconciled with the more concrete guidance of [§ 1229b(a)(3) ], which limits the Attorney General’s cancellation authority only when the noncitizen has actually been ‘convicted of a[n] aggravated felony’ — not when he merely could have been convicted of a felony but was not.” Id. The Supreme Court thus had the clear opportunity to embrace the reasoning of the majority opinion, but did not.
*256 Carachuri and the case at bar are further distinguished on the charging decisions incident to the underlying state convictions. Carachuri had been convicted of simple drug possession under Texas law. The Supreme Court noted that Texas law authorized a sentencing enhancement for such a conviction only if the prosecutor charged the defendant as having been previously convicted of that offense or one of a similar class. Although the Texas prosecutor could have charged Carachuri as a recidivist and sought such an enhancement, the prosecutor elected not to do so, and instead charged him only for simple possession. Thus, under the relevant Texas provisions by which Carachuri was charged and convicted, the conviction was for simple possession without a recidivist charge.
Neither does Rodriquez’s discussion of recidivist factors negate my proposed reading of § 802(44). While a recidivist finding could have increased Simmons’ sentence to more than twelve months of actual imprisonment, a multitude of other factors also could have caused an adjustment of his sentence. Under the Act at least forty different factors can alter an otherwise presumptive sentence, but not the coverage of the charging statute. See N.C. Gen.Stat. § 15A-1340.16(d)-(e).
If anything, Rodriquez would seem to support the Government’s position. As the majority opinion recognizes, Rodriquez rejected the concept that some construct outside the statute of conviction, like a guidelines range, could alter what the terms of the federal statutory enhancement covered:
[T]he concept of the ‘maximum’ term of imprisonment or sentence prescribed by law was used in many statutes that predated the enactment of [the] ACCA and the federal Sentencing Reform Act of 1984, and in all those statutes the concept necessarily referred to the maximum term prescribed by the relevant criminal statute, not the top of a sentencing guideline range.
128 S.Ct. at 1792. I would submit it is the majority opinion, contrary to Rodriquez, that looks to the sentencing factors under the Act to determine the scope of § 802(44) and not to Simmons’ state offense of conviction: a crime which the North Carolina statute provides is “punishable” for up to fifteen months’ imprisonment.
There is no separate recidivist possession charge under North Carolina law. The offense — N.C. Gen.Stat. § 90-95 — is the same charge, regardless of a defendant’s criminal history. Only after a defendant is convicted, at sentencing, does criminal history come into play. Moreover, over forty factors, besides recidivism, may go into a North Carolina sentencing decision under Gen.Stat. § 90-95. N.C. GemStat. § 15A-1340.16 and § 15A-1340.17. A defendant is convicted of the same offense — N.C. GemStat. § 90-95— regardless of his criminal history or the specific characteristics of that offense.
Admittedly, the other components used in determining where within the Act a particular defendant falls must be noticed prior to sentencing. If a prosecutor seeks to depart from the presumptive range to the aggravated range, the State must provide notice of its intent to prove aggravating factors and the jury must find those factors beyond a reasonable doubt. See § 15A-1340.16. However, the aggravated factors need not be part of the indictment or formal charge, nor is the conviction itself different from a conviction for the presumptive (or, indeed, mitigated) offense.
N.C. GemStat. § 90-95 constitutes one offense under North Carolina law; the distinguishing factors of criminal history and *257 offense characteristics become relevant only at sentencing, when deciding a particular defendant’s sentencing range. They have no bearing on the inquiry here, that is, whether the statutory offense itself is punishable by more than one year imprisonment.
The majority opinion also contends its approach is appropriate because it is consistent with the “panoply of procedural protections afforded to offenders facing a potentially aggravated sentence” and is necessary so as not to “second-guess [state prosecutors’] judgment” that Simmons’ conduct did not contain aggravated offense characteristics. Maj. op. at 244-45 and 249-50; see id. at 254 (arguing this approach “makes a mockery of North Carolina’s carefully crafted sentencing scheme”). However, reading the plain language of § 802(44) to mean what it says does not second-guess any component of Simmons’ state conviction. The North Carolina process of charging, convicting, and punishing Simmons was long decided and wholly independent of a later-in-time charge by the federal government for a different crime. As Justice Alito explained in Rodriquez, this later crime has no bearing on the earlier state crime and the state crime is merely a factor in sentencing regarding the later offense:
When a defendant is given a higher sentence under a recidivism statute — or for that matter, when a sentencing judge, under a guidelines regime or a discretionary sentencing system, increases a sentence based on the defendant’s criminal history — 100% of the punishment is for the offense of conviction. None is for the prior convictions or the defendant’s “status as a recidivist.” The sentence “is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because [it is] a repetitive one.”
Id. at 1789 (citation omitted). Instead, I suggest the rationale set out here in dissent recognizes that Congress is the entity charged with determining the proper punishment for the later, independent federal offense for which Simmons now stands convicted.
Exercising its proper authority, Congress decided that the sentence for a conviction of later violating a federal criminal statute should be enhanced based on the defendant having a prior conviction that falls within the definition Congress chose to write. Congress further decided to define that enhancement in terms of the pri- or conviction being for an “offense” “punishable by a term of more than one year” imprisonment, rather than using language that would require that the defendant personally was subject to punishment for that period. Applying § 802(44)’s plain language when reviewing the nature of a pri- or conviction in no way undermines or second-guesses the prior judgment of North Carolina regarding the earlier independent act that resulted in Simmons’ state conviction and sentence. This approach provides no commentary about North Carolina’s “carefully crafted sentencing scheme.” The later federal court simply looks at the antecedent statutory offense to fulfill its duty under the federal statute authorizing an enhanced punishment for the separate federal crime.
I would also submit the majority’s extrapolation of Carachuri and Rodriquez in this case fosters an unnecessary and burdensome sentencing regime. Instead of simply looking to the written scope of the antecedent statute of conviction, sentencing courts will be constrained to parse multiple variations of hundreds of possibly applicable statutes across the country. The prosecutor, counsel, judge, and citizen will not know where the defendant’s acts fit upon the federal sentencing enhance *258 ment spectrum without delving into the particular acts underlying long-settled proceedings. The sentencing approach resulting from the majority opinion’s reading creates an unworkable rule that unnecessarily complicates the already complex arena of federal criminal sentencing.
The reading of § 802(44) outlined in this dissent is, I proffer, one of plain meaning, common usage, and common sense. It does not suffer the infirmity found by the Carachuri court to be “counterintuitive and unorthodox.” Carachuri, 130 S.Ct. at 2585 (internal quotation marks and citation omitted). Neither does it argue “for a result that the English language tells us not to expect.” Id. Perhaps that type of result is what Justice Souter should have presaged in Lopez when he noted that “Congress, like ‘Humpty Dumpty,’ has the power to give words unorthodox meanings.” Id. at 2585 (quoting Lopez, 549 U.S. at 54, 127 S.Ct. 625). Clearly, so do courts.
III.
For the foregoing reasons, I do not find that the Supreme Court’s decisions in Carachuri or Rodriquez require the result set forth in the majority opinion. The plain language of § 802(44) calls for an offense-specific analysis, determining whether a prior conviction is for an “offense punishable by more than one year imprisonment.” As such, we follow the mandate of Congress to look to the maximum authorized punishment for any defendant convicted of the offense. Accordingly, I respectfully dissent and would affirm the judgment of the district court.
Chief Judge Traxler, Judge Wilkinson, Judge Niemeyer, and Judge Duncan join in this dissent.

. As noted by the Supreme Court, the term “aggravated felony” "is unique to Title 8, which covers immigration matters.” Carachuri, 130 S.Ct. at 2585. This term appears in no other place in the U.S. Code.

. The majority's analysis of the Act confuses the salient issue by focusing on the permitted sentences for different defendant-specific combinations of criminal history and offense characteristics. While individual defendants’ maximum sentences will differ according to a multitude of variables under the Act, the authorized punishment for violating N.C. Gen. Stat. § 90-95 does not alter absent legislative change; that maximum is fifteen months, which meets the plain language of § 802(44).