**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 09-5037**

───────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

BRIT ALZONIA MCCULLUM,

        Defendant - Appellant.

───────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:07-cr-00128-FDW-1)

───────────

Submitted:  January 10, 2012      Decided:  March 15, 2012

───────────

Before TRAXLER, Chief Judge, FLOYD, Circuit Judge, and J. Michelle CHILDS, United States District Judge for the District of South Carolina, sitting by designation.

───────────

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

───────────

Steven T. Meier, MEIER LAW, Charlotte, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, Mark T. Odulio, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Brit Alonzia McCullum was convicted and sentenced for possession of a firearm by a felon, possession with intent to distribute marijuana, and possession of a firearm in furtherance of a drug trafficking crime. On appeal, McCullum challenges the denial of his motion to suppress and his classification as a career offender at sentencing. For the reasons that follow, we affirm McCullum's convictions, vacate his sentences, and remand for resentencing in light of United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc).

I.

On January 31, 2007, Officer Van Almen, a member of the Charlotte-Mecklenburg Police Department ("CMPD"), was on patrol in his police cruiser in an area of Charlotte known to law enforcement for high crime and drug activity. He began following a Dodge Ram pickup truck that had been reported stolen. The pickup truck was occupied by three men. After momentarily losing sight of the pickup truck, Van Almen found the truck in a nearby parking lot and observed a man running from the area. Van Almen decided not to pursue him. Instead, he entered the parking lot to further investigate the pickup truck and saw a person later identified as McCullum driving a Cadillac Eldorado toward the parking lot exit. Recalling a

2

report about a stolen Cadillac, Van Almen blocked the exit with his police cruiser, preventing McCullum from leaving the parking lot.

When McCullum realized he could not leave the parking lot through the exit, he aggressively drove the Cadillac in reverse approximately fifty yards at a high rate of speed past open parking spaces and pulled the vehicle into the last available parking space. Van Almen believed that McCullum was trying to get away from him, so he drove toward the Cadillac. McCullum got out of the Cadillac, began running, and did not stop when Van Almen ordered him to do so. Van Almen therefore chased McCullum, caught him, and, after a struggle, placed him under arrest for resisting a police officer. A search of McCullum incident to his arrest yielded $2,734 in cash and a set of keys that belonged to the Cadillac. McCullum was handcuffed, placed in the back seat of a patrol car, and transported back to the area where the Cadillac was parked.

During this time, other officers had arrived and had conducted a search of the Cadillac passenger compartment but found nothing of note. Van Almen went to the Cadillac and used one of the keys recovered from the search of McCullum to open the trunk compartment. While Van Almen was searching the trunk, a security guard patrolling the parking lot approached Van Almen to speak with him. The parking lot where the Cadillac was

3

parked was privately owned, and the security guard banned McCullum from the premises and wanted the Cadillac removed as well. Van Almen spoke with his supervising officer, Sergeant Jones, and got permission to have the Cadillac towed. The search of the trunk ultimately yielded a large bag of marijuana, weighing 63.2 grams, and a 31-round magazine for a Glock pistol, fully loaded with 9mm ammunition.

After searching the trunk compartment, Van Almen discovered that the glove box was locked. The keys he had taken from McCullum did not unlock it, and McCullum claimed that he did not know how to open it. Van Almen consulted with Sergeant Jones concerning whether the circumstances warranted using force to open the glove box. Sergeant Jones gave McCullum permission to open the glove box, concluding that the presence of the marijuana, the clip of ammunition, and the large amount of U.S. currency found on McCullum gave the officers probable cause to go into the locked glove box. Van Almen then forced open the glove box and found a fully-loaded Glock 19c handgun with a laser beam sight attachment. Van Almen ultimately had the Cadillac towed as requested by the security guard.

McCullum was charged with (1) possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1); (2) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); and (3) possession of a firearm in

4

furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924 (c)(1)(A). Prior to his trial, McCullum filed a motion to suppress the evidence recovered in the search of the Cadillac. The district court denied the motion on two alternative grounds. The court first concluded that Van Almen had probable cause. According to the court, the money found on McCullum's person, the fact that he fled, and the fact that McCullum was in a high-crime area, along with the background evidence about the investigation of the stolen pickup truck, amounted to probable cause to open the trunk of the Cadillac. Adding the fully loaded, 31-round magazine found in the trunk compartment to the above list of facts and evidence, according to the court, gave Van Almen probable cause to then forcibly open the glove box. Alternatively, the district court concluded that the items recovered from the Cadillac would have been inevitably discovered pursuant to CMPD's inventory policy.

The case went to trial, and a jury returned a verdict of guilty on all charges. At sentencing, the district court accepted the presentence report's ("PSR") classification of McCullum as a career offender based on three prior drug offenses, see U.S.S.G. § 4B1.1(a) (2008), and sentenced him to three consecutive 120-month sentences. On appeal, McCullum contends that the district court erred in denying his motion to

5

suppress and erred in classifying him as a career offender.  We address each claim in turn.

II.

We turn first to McCullum's challenge to the denial of his suppression motion.  "In reviewing the denial of a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error."  United States v. Phillips, 588 F.3d 218, 223 (4th Cir. 2009).  "[W]e must construe the evidence in the light most favorable to the prevailing party, and give due weight to inferences drawn from those facts by resident judges and law enforcement officers."  United States v. Lewis, 606 F.3d 193, 197 (4th Cir. 2010) (internal citation and quotation marks omitted).  We may affirm a district court's ruling on a motion to suppress on any ground apparent from the record.  United States v. Smith, 395 F.3d 516, 519 (4th Cir. 2005).

"Generally, the exclusionary rule provides that evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure."  United States v. DeQuasie, 373 F.3d 509, 519 (4th Cir. 2004) (internal quotation marks omitted).  Under the inevitable discovery exception to the exclusionary rule, however, evidence that is illegally seized is nonetheless

6

admissible if the government can prove "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." <u>Nix v. Williams</u>, 467 U.S. 431, 444 (1984). A routine inventory search policy may serve as the basis for the admission of evidence under the inevitable discovery doctrine. <u>See</u> <u>United States v. George</u>, 971 F.2d 1113, 1121 (4th Cir. 1992). For an inventory search to be valid, "the search must have be[en] conducted according to standardized criteria, such as a uniform police department policy, and performed in good faith." <u>United States v. Matthews</u>, 591 F.3d 230, 235 (4th Cir. 2009) (alteration in original, internal citation and quotation marks omitted).

In this case, Van Almen had the Cadillac towed because McCullum had been banned from the premises where the vehicle was parked and a representative of the owner of the parking lot wanted the car taken off the lot. The government presented evidence that CMPD has a policy of conducting an inventory search on every vehicle that it has towed and that the inventory searches include a search of all compartments that might contain an item of value. The purpose of these inventory searches, according to the government, is to document items of value remaining within the vehicle. As the district court found, the towing of the Cadillac would have triggered an inventory search of the trunk regardless of whether probable cause for the search

7

of the trunk existed or not. This inventory search would have revealed the marijuana and the clip of ammunition.

Although the policy did not permit officers to force open a locked glove compartment during an inventory search, the ammunition discovered in the trunk would have provided probable cause to conduct a warrantless search of the vehicle for the gun associated with the seized ammunition. See Michigan v. Thomas, 458 U.S. 259, 260-62 (1982) (explaining that evidence seized during an inventory search of a vehicle can provide probable cause to search elsewhere in the vehicle for additional contraband). The scope of that warrantless search would have included "every part of the vehicle and its contents that may [have] conceal[ed] the object of the search." United States v. Ross, 456 U.S. 798, 825 (1982). Because a glove box can conceal a gun, the glove box of the Cadillac was obviously within the scope of the warrantless probable cause search. The fact that the glove box was locked would not prevent us from upholding the lawfulness of its search. "[I]f the police have probable cause to believe that there is contraband . . . anywhere in the car they can search for it even if it is in a . . . locked compartment such as the glove compartment . . . ." United States v. Mazzone, 782 F.2d 757, 760 (7th Cir. 1986); see also Ross, 456 U.S. at 823 ("The scope of a warrantless search based on probable cause is no narrower . . . than the scope of a

8

search authorized by a warrant supported by probable cause."). Accordingly, we affirm the district court's denial of the motion to suppress because the marijuana, the clip of ammunition, and the gun would have been inevitably discovered.[*]

## III.

McCullum also challenges his sentence, arguing that the district court improperly characterized him as a career offender pursuant to § 4B1.1(a) of the Sentencing Guidelines. "We review de novo a question concerning whether a prior state conviction qualifies as a prior felony conviction under the career offender provision." United States v. Jones, 667 F.3d 477, 482 (4th Cir. 2012).

"A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense . . . is a felony that is . . . a controlled substance offense; and (3) the defendant has at least two prior felony convictions of . . . a controlled substance offense." U.S.S.G. § 4B1.1(a). For the purposes of § 4B1.1(a), a "controlled substance offense" is "an offense under federal or state law,

---

[*] Given our conclusion that the evidence inevitably would have been discovered, we express no opinion on whether Van Almen's search was supported by probable cause.

9

punishable by imprisonment for a term exceeding one year." Id.
§ 4B1.2(b).

The PSR categorized three prior North Carolina drug offenses as predicate offenses for the career offender guideline: a 1998 conviction for possession with intent to sell and deliver cocaine; a 1999 conviction for delivery of cocaine; and a 2002 conviction for possession with intent to sell and deliver cocaine. McCullum received 12 months' probation for the 1998 offense; a suspended 6-8 month sentence for the 1999 offense; and a 6-8 month sentence for the 2002 offense.

The sentences for McCullum's three prior drug offenses at issue were imposed pursuant to North Carolina's structured sentencing scheme, which establishes three sentencing ranges for each defendant—mitigated, presumptive, and aggravated. Based on either mitigating or aggravating factors, the sentencing court may depart from the presumptive range. However, even if it departs from the presumptive range, the sentencing court must still impose a sentence below a maximum level, which is determined by the class of the offense committed by a defendant combined with the defendant's criminal history.

With regard to two of McCullum's convictions deemed predicate offenses by the district court—the 1999 delivery conviction and the 2002 possession conviction—McCullum received sentences of less than one year based on his criminal history

10

and the class of the respective offenses.  He contends that those offenses cannot serve as predicate offenses for him because, based on his criminal history, he could not have received a sentence exceeding one year for either offense, even if he were sentenced within the aggravated range.  Therefore, he argues, the convictions do not qualify as "controlled substance offenses" under § 4B1.2(b), and the district court erred by classifying him as a career offender.

At the time of sentencing in this case, we had rejected this individualized approach, holding "that a prior North Carolina conviction was for a crime punishable by imprisonment for a term exceeding one year, if any defendant charged with that crime could receive a sentence of more than one year."  United States v. Harp, 406 F.3d 242, 246 (4th Cir. 2005) (internal citation and quotation marks omitted).  After sentencing in this case, however, we overruled Harp and held that under North Carolina's structured sentencing scheme, an offense is punishable for a term exceeding one year only if the particular defendant before the court could have received such a sentence based on his criminal history and the nature of his offenses.  See United States v. Simmons, 649 F.3d 237, 241-45 (4th Cir. 2011) (en banc).

In a letter submitted to this court after oral argument pursuant to Rule 28(j) of the Federal Rules of

11

Appellate Procedure, the government conceded that McCullum's sentences should be vacated and the case remanded for resentencing because of our intervening <u>Simmons</u> decision. We agree with the government. Therefore, in light of <u>Simmons</u>, we vacate McCullum's sentences and remand the case for resentencing.

IV.

For the foregoing reasons, we affirm McCullum's convictions, vacate his sentences, and remand the case for resentencing.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>